MARY M. BRIDGE ET AL. *vs.* GEORGE M. DILLARD,
EXECUTOR.

*Caveat to Will Not Offered for Probate—Residence of Testator—Juris-
diction of Orphans' Court—Custody of Will Awarded to Non-Resi-
dent Executor.*

The Orphans' Court has no jurisdiction to determine the question of the
residence of a testator or the validity of his will, unless the will is
offered to the Court for probate.

A petition filed in the Orphans' Court of Baltimore City alleged that a
woman recently deceased was a resident of that city; that she left a pa-
per writing purporting to be a will which was void on account of her
mental incapacity, the practice upon her of fraud, undue influence,
etc., and that she died intestate. The will was attached to the petition
as an exhibit. The petitioners asked that issues be sent to a Court
of law for the trial of these allegations. The non-resident executor
named in the will appeared and alleged that the deceased was a resi-
dent of the State of Virginia, that the will should be offered for probate
in that State and asked that the custody of the will should be awarded
to him for that purpose. The original petitioners then asked that an
issue concerning the residence of the testatrix be sent to a Court of law
for trial. *Held,* that the Court was without jurisdiction to direct a trial
of this issue or to determine the validity of the will since the same had
not been offered for probate.

*Held,* further, that the executor was entitled to the custody of the will.

*Decided November 15th, 1906.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before MCSHERRY, C. J., BRISCOE,
BOYD, SCHMUCKER, JONES and BURKE, JJ.

*T. R. Clendinen* and *William S. Bryan, Jr.,* for the appel-
lants.

The validity of Mrs. Rhea's will could not have been de-
cided under the petition filed by the appellants. In order to

enable the Orphans' Court to determine a will to be invalid,
it must be propounded for probate by some one claiming it to
be valid.   *Emmert* v. *Stouffer,* 64 Md. 543.

If the appellee who claimed the will to be valid saw fit he
could offer it for probate; but until it was offered for probate
by "some friend of the will," the Court could not pass upon
it; if it were not offered for probate, the Court could, if Mrs.
Rhea had her home in Baltimore, grant letters of administra-
tion to the person entitled to them under Art. 93 of the Code.
But the question here is not whether the Orphans' Court
could determine as to the validity of Mrs. Rhea's alleged will
under the appellant's petition, but whether that tribunal acted
correctly in awarding the custody of this alleged will to the
appellee, before the question of the domicile of Mrs. Rhea had
been determined in a legal way.

If the location of the domicile of Mrs. Rhea alleged in the
petition of the appellee to be in Norfolk and alleged in the an-
swer of the appellants to be in Baltimore, was material to be
ascertained before the Court determined whether it would de-
liver this alleged will of Mrs. Rhea to the appellee to be taken
to Norfolk, it was clearly erroneous for the Court to or-
der that paper to be delivered to the appellee before the issue
proposed by the appellants had been passed on by a jury in a
law Court.

The appellants had propounded that issue and had de-
manded that it be sent to a Court of law for trial.   The stat-
ute is explicit that either party to a plenary proceeding can
*require* an issue to be made up and sent to a Court of law for
trial.   Code, Art. 93, sec. 254.

It is elementary that if Mrs. Rhea lived, at the time of her
death, in Baltimore, the Orphans' Court of that city would be
the proper place, and the only proper place, to offer her
alleged will for probate and contest its validity.   *Stanley* v.
*Safe Deposit Co.,* 87 Md. 450; *Rabord* v. *Hammond,* 2 H. &
G. 42; *Shultz* v. *Houck,* 29 Md. 24; *Merrill* v. *Morrissett,* 76
Ala. 433; *Irwin* v. *Scriber,* 18 Cal. 507; *Bolton* v. *Schreiver,*
135 N. Y. 65.

If she was a resident of Norfolk, Virginia, at the time of her death the appropriate tribunal in that jurisdiction would be the proper place to offer the will of Mrs. Rhea for probate, and to contest its validity.

It has been held in one case in North Carolina, decided in 1844, that while *it is most proper* that a will should be submitted for probate first in the forum of the domicile of the deceased, it was not absolutely necessary. *Hyman* v. *Gaskins*, 5 Iredell (N. C.) 267.

If the will of a person domiciled in one State should from any cause be first admitted to probate in another State, and it afterwards became necessary or desirable to offer such will for probate in the State of the deceased's real domicile, *the actual will itself*, and not an authenticated copy of the probate in the State where it has been probated, must be offered for probate. *Bate* v. *Cirmerana*, 59 Miss. 513. *Stark* v. *Parker*, 56 N. H. 481; *Wallace* v. *Wallace*, 3 N. J. Eq. 616.

There is confessedly property belonging to Mrs. Rhea's estate in Baltimore. Therefore, it will sooner or later be necessary that letters testamentary, or of administration, be taken out here. If the validity of the alleged will is to be insisted on by the appellee, it will be necessary for him, if Mrs. Rhea was a resident of Baltimore, to offer *the original will* for probate in the Orphans' Court of Baltimore City, and not an authenticated copy of any probate which he might secure from the Courts of Norfolk.

It was, therefore, most improvident for the Orphans' Court to pass an order permitting this appellee to remove the will from this jurisdiction for the avowed purpose of offering it for probate elsewhere before it was judicially determined whether this was the residence of the testatrix.

The appellants finding the alleged will had imposed on them the duty of either delivering the same to the Orphans' Court or the Register of Wills, where the testatrix resided at the time of her death, or of delivering the same to the executor named in the will—Code of 1904, Art. 93, secs. 332-333— they chose to deliver the same to the Register of Wills, to-

.gether with a petition to the Orphans' Court, contesting and denying its validity. The Register of Wills could only lawfully deliver this alleged will to the executor named in it "for the purpose of having it proved according to law." Code, Art. 93, sec. 332.

Now, as already stated, the Orphans' Court knew—for the appellee had acknowledged it under oath that he would, if given possession of the alleged will, take it out of this jurisdiction to Norfolk and there go through the form of probating it. This was clearly an improvident thing to do, if Mrs. Rhea resided at the time of her death in Baltimore. Therefore, before the Orphans' Court undertook to order or permit this alleged will to be taken out of this jurisdiction, it was, its clear duty to decide this preliminary question of fact on which the appellants had prayed an issue, *i. e.*, as to the domicile of the testatrix. It is an extraordinary thing, it is maintained, for a Maryland Court to send a paper within its custody to a foreign Court, when a Maryland suitor is present in Court alleging a fact, which, if true, shows that the Court delivering up the paper and not the Court to which it is being delivered, is entitled to, and should (and must, eventually) pass upon its validity.

*Chas. McH. Howard* (with whom were *Venable & Baetjer* on the brief), for the appellee.

The will having been filed in the Orphans' Court in the manner shown by the record itself (as an exhibit to a petition for letters of administration or alleged caveat), were the appellees entitled to have issues sent to a Court of Law to determine the residence of the testatrix, before the Court could order its delivery to the executor named therein, as the proper legal custodian of the instrument?

Before the Orphans' Court is obliged to grant issues at the request of either party to a contest of any nature pending before it, it is at least not only the right, but the duty, of the Orphans' Court to first ascertain whether such issues raise a question of fact whose determination is a necessary preliminary

to the action requested. Even if the language of the statute were much more peremptory, such a power would be absolutely necessary to the proper and orderly conduct of its business; and though the Orphans' Court may be a Court of limited jurisdiction, it is not destitute of those powers which are indispensable to enable any Court to accomplish the purposes for which it was created. *Smith* v. *Young,* 5 Gill, 197; *Williamson* v. *Montgomery,* 40 Md. 373; *Cain* v. *Warford,* 3 Md. 462: *Ramsay* v. *Thompson,* 71 Md. 318.

We do not deny that when the question of a testator's residence is raised in a regular probate proceeding before the Orphans' Court, such question is one which it would be proper to determine before proceeding further, and for the determination of which the parties would be entitled to have an issue sent to a Court of Law. The question is, was this such a proceeding?

This question, is conclusively answered by the authority of *Emmert* v. *Stouffer,* 64 Md. 543. In that case, as in the present, a will had been filed in the Orphans' Court, with a petition alleging the invalidity of it, and asking that it be determined void, and that letters of administration be issued to the petitioners. Upon this petition, after setting the matter down and hearing testimony, the Court finally passed an order declaring the will void, and directing the issuance of letters of administration. The appeal was taken from a case involving the title to property which had been owned by the intestate testator, and this Court decided that the supposed adjudication of the Orphans' Court was wholly without effect upon the validity of the paper as a will, for the reason that "the Orphans' Court has no jurisdiction to determine the question of probate, until the will is exhibited for the purpose of having it proved." "Now the petition on which the Orphans' Court granted letters of administration, distinctly stated that the paper-writing pnrporting to be a will was not presented for probate; on the contrary, the averment was made that it was not the last will and testament of the deceased." It was, therefore, decided that the purchaser could not be required to

take the title. CHIEF JUSTICE ALVEY, while concurring in the reversal of the decree appealed from, dissented in some respects from the opinion, because he was unwilling to hold that the action of the Orphans' Court was void and a nullity as against the parties actually participating in the proceedings; though holding it void against the remaindermen not represented.

Besides this Maryland decision, we have found no case in which, as in the present one, a will was "offered for caveat" instead of being first offered for probate and then contested. But it will be instructive to refer to the authorities elsewhere upon the general question as to what are the proper methods of probating and of contesting a will.

The rule in England is well settled, viz: that where there ·is an executor named in a will, only he can offer the instrument for probate. If he fails or unreasonably neglects to do so, the remedy of the parties (interested for or against the will), is to have him cited for probate, 2 *Ed. Encyc. Law*, vol. 23, "Probate and Letters of Adm." p. 122; *Ency. Pleading and Practice*, vol. 16, "Probate," p. 997; 1 *Williams on Executors*, p. 258, 225.

Under the various statutes passed in many of the United States, a more liberal rule has been adopted, and it is not required that proceedings for probate be initiated by the executor only. But under these statutes it has been uniformly held that, at least if objection be made, the person propounding the will must show his interest thereunder; and further, that whether or not the executor be the only person entitled to institute probate proceedings, he is at least the proper and most suitable person for that purpose. *Schouler on Executors*, 53, 64; *Cyc.*, vol. 18, "Executors and Administrators," p. 206; 2 *Ed. Encyc. Law*, vol. 23, "Probate and Letters of Adm." p. 122; *Encyc. Pleading and Practice*, vol. 16, "Probate," p. 997, etc.

We do not of course deny that a "caveat" may be filed before a will is exhibited for probate. Such a caveat is in effect a warning to the Court not to admit the will to probate in

common form, when propounded; it does not institute a probate proceeding, but this is instituted when the will is subsequently propounded for probate by the executor or those charged with the right or duty of so offering it.    Strictly speaking, this is the only correct use of the word "caveat," though with us that word has come, in popular usage, to designate any form of will contest, including what the Code refers to as a petition for re-examination and re-hearing after probate in common form.    In England, however, the word is still strictly used in its primary signification.  "A caution to stop probate, etc., and remains in force six months."    1 *Williams on Executors*, star p. 496.

Neither under the English practice, nor under that of any of the United States, so far as we have been able to discover, are wills "offered for caveat;" nor is a probate proceeding instituted by the enemies of the will.

Code, Art. 93, secs. 334, etc., while regulating the manner in which probate is to be obtained and objections heard and determined, when a will is once exhibited or offered for probate, do not further specify by whom such proceedings are to be initiated; but clearly contemplate such an *exhibition for probate* as the preliminary to the jurisdiction, as is indeed expressly decided by this Court in the case of *Emmert* v. *Stouffer*, above cited.

So far then as our statutes contain any provisions in regard to the point which we are now considering, they expressly recognize the executor as authorized to demand the will, for the purpose of having it duly proved, even after it has been duly and regularly filed with the Register of Wills by the person in whose custody it may happen to be at the time of the testator's death.

Inasmuch, therefore, as the original filing of this will by the appellants in the Orphans' Court was altogether irregular and conferred no probate jurisdiction on the Court, it was the plain duty of the Court to order its delivery up to the executor when formally demanded by him.    By virtue of what jurisdiction, or for what purpose, the Court should require as a condition precedent to such delivery the sending of issues to

determine a question not yet properly or necessarily arising before it, under its probate jurisdiction, is difficult to see.

BURKE, J., delivered the opinion of the Court.

On the 12th day of April, 1906, the Orphans' Court of Baltimore City passed the following order:

"In the matter of the Estate ⎱ In the Orphans' Court of Baltimore City. of Columbia Rhea. ⎰ timore City.

The matter of the petition of George M. Dillard, executor of the last will and testament of Columbia Rhea, deceased, praying for the delivery to him as such executor of said will, the same being now in the custody of the Court; and the petitioners, Mary M. Bridge and Mary C. King, for the granting of an issue of fact, as the residence of said deceased, to be sent to the Court of law to be tried by a jury, having been heard and argued by counsel for the respective petitioners, the Court is of opinion, that the filing of the will in the manner it was, does not constitute a probate proceeding in this Court, and until the same is offered for probate this Court is without jurisdiction to grant the issue prayed, the same not arising at this time, will be refused: George M. Dillard as executor as aforesaid having by his petition demanded the custody of the will in controversy, for the purpose of having it proved according to law, as is his duty to do, we will award him the custody thereof for that purpose. It is therefore ordered this 12th day of April, 1906, that the petition of Mary M. Bridge, &c., for the granting of the issue aforesaid be and the same is hereby dismissed; and that the custody of the will of the said Columbia Rhea, deceased, be and the same is hereby awarded to George M. Dillard, the executor named in said will; and that the costs of the procceeding be paid by the petitioners, Mary M. Bridge and Mary C. King." The record in this case brings up for review the propriety of that order.

The questions in the case, which will be stated hereafter, arose out of the following facts: Columbia Rhea executed her last will on the 15th day of June, 1897, by which she devised and bequeathed a large estate to the trustees of Randolph-

Macon College, a corporation of the State of Virginia, upon the trusts declared therein.   In her will she declared herself to be a resident of the city of Norfolk in the State of Virginia, and she appointed George M. Dillard of that city as the executor of the will.   Her estate is estimated at $80,000, all of which, except about $6,000 in cash on deposit in a Baltimore bank, is located in Norfolk, Virginia.  Mrs. Rhea, died in the city of Baltimore on the 1st day of March, 1906.   On the 12th day of March, 1906, the appellants, Mary M. Bridge and Mary C. King, a sister and niece respectively of said testatrix, filed a caveat to the will in the Orphans' Court of Baltimore City, in which they made the usual allegations of mental incapacity, fraud, undue influence, etc., and as a part of the caveat they attached the original will as an exhibit.   By whom, and precisely where the will was discovered, or how it came into the possession of the appellants does not clearly appear.   Upon these points the allegations of the parties are conflicting. After alleging the death of Mrs. Rhea in Baltimore City, and that she left no children, parent, or husband surviving her, and after a statement of their own relationship, they charged that Mrs. Rhea died intestate, and that Mary M. Bridge is the first person entitled to administer upon her estate.   Then follows these allegations which constitute the 6th paragraph of the petition: "That among some of the things of the said Columbia Rhea, a paper writing now filed herewith as 'Petitioner's Exhibit No. 1,' was discovered, which is marked in one or more places, will of Columbia Rhea, and while as before stated the said Columbia Rhea in fact died intestate your petitioners are advised it is their duty to deposit said paper in this Court, so that whatever steps are deemed appropriate may be taken in reference thereto."   They prayed first that the Court might pass an order, or decree declaring and determining that said paper writing is not the last will and testament of the said Columbia Rhea, and that it is void and invalid; second, that letters testamentary, or in such way as may be deemed best may be granted to your petitioners upon the estate of Columbia Rhea; third, that issues be sent to a Court of law in order

that the questions of fact alleged in respect to the will might
be tried by a jury.

On March 20th, 1906, the appellee, George M. Dillard, the
executor named in the will filed a petition in which he recited
that while he was confined to his bed by illness in Norfolk,
Virginia, the will in question had been discovered in a safe in
the residence and home of the testatrix in that city, and
brought to Baltimore on behalf of the appellants for the alleged
purpose of being read to the relatives of the testatrix there,
and then returning it to Norfolk to be filed in the proper Court
for delivery to him as executor therein named, and that in
violation of such promise had been filed in the Orphans' Court
in Baltimore as an exhibit to an alleged caveat proceeding by
the appellants. As stated in the brief of counsel for the ap-
pellee, "this petition further states that the testatrix was a
resident of Norfolk (as she herself recited in the will) and that
all of her estate, consisting of real and personal property, aggre-
gating about $80,000 (except about $6,000 on deposit in a Bal-
timore bank) was located there; and that her will should be
offered for probate in the proper Court of that city. The
petition, after concluding with the following paragraph prays,
that the custody of the will be awarded to the petitioner:

"8. That in any case, however the filing of said will, not for
the purpose of initiating proceedings for the probate thereof,
but merely as an exhibit to an alleged caveat thereto in this
Court, was altogether improper, irregular and unlawful; and
that the said will should be in any case returned to your peti-
tioner, who, as the executor named therein is the proper per-
son to propound, or offer the same for probate in the proper
Court or Courts."

To this petition the appellants filed an answer reiterating
and elaborating in many particulars the grounds of objections
to the will stated in the caveat and prayed that the will be not
delivered to George M. Dillard, the executor, for the purpose
stated in his petition of filing or offering the same "for pro-
bate in the proper Court in said city of Norfolk." The Court
set the application of the executor for the delivery of the will

for hearing, at which time the appellants submitted the following issue which they asked the Court to send to a Court of law for trial before a jury:   Was the said Columbia Rhea a resident of the city of Baltimore at the time of her death therein, on the first day of March, nineteen hundred and six? Whereupon the Court passed the order appealed from which is set out in the beginning of this opinion.

The sole questions, therefore presented are first, was it the duty of the Orphans' Court, under the circumstances narrated, to have sent an issue as to Mrs. Rhea's residence to a Court of law for trial?   Secondly, ought the will to have been delivered to George M. Dillard, the executor, for the purpose stated in his petition therefor?   It has long been settled in this State that it is not the right of the litigant in the Orphans' Court, under the provisions of the statutes embodied in Art. 93, *secs. 253 and 254, Code 1904,* to have any question he may see fit to propose sent to a Court of law for trial.   The law directs that only such questions of fact as are* properly in issue between the parties in that Court shall be sent to a Court of law upon the application of either party.   It is the duty of the Orphans' Court before it takes action upon the issues presented to determine whether it has jurisdiction of the subject-matter, or whether the questions raised by the issues are properly before the Court for decision, or whether the proposed issues are irrelevant or immaterial to the questions properly before the Court.   If the Court has no jurisdiction in the premises, if the questions are not properly before the Court, or not relevant, or material, it is the duty of the Court to refuse to send the issues.   *Smith* v. *Young,* 5 Gill, 146; *Williamson* v. *Montgomery & Spencer, executors,* 40 Md. 373; *Munnickhuysen* v. *McGraw,* 35 Md. 280; *Cain* v. *Warford,* 3 Md. 462.

The Orphans' Court unquestionably had no jurisdiction to send up the issues as to Mrs. Rhea's residence under the petition of the appellants filed March 12th, 1906, because it had no jurisdiction to take any action in regard to the will, or the residence of the testatrix, until the will was before the

Court in some proper way for probate· That the Orphans' Court of Baltimore City had no power, under that petition, to declare, as the petition asked it to do, "that said paper writing is not the last will and testament of said Columbia Rhea, and that it is null and void," because the Orphans' Court has no jurisdiction to pass upon the validity or invalidity of the will, until the will has been propounded for the purpose of having it proved. This was conclusively settled in the case of *Emmert* v. *Stauffer*, 64 Md. 543, and hence to have sent the issue under that petition would have been to institute an inquiry concerning a matter not properly before the Court, and over which the Court then had no jurisdiction.

We decide that the question of the residence of a testatrix can not be raised in the Orphans' Court, until the question as to the probate of the will is properly before the Court. The will must either be offered for probate or the question of its probate presented to the Court under proper proceedings for that purpose. These propositions appear to be clearly established by the cases of *Emmert* v. *Stauffer, supra*, and *Stanley* v. *The Safe Deposit Company*, 87 Md. 454. The first decides that "the Orphans' Court has no jurisdiction to determine the question of probate until the will is exhibited for the purpose of having it proved." And the latter decided that the question as to the residence of the testator at the time of his death, "is involved in, and is an inseparable part of, the power to grant the probate." The question of the probate of the will not being before the Court in this case, the issue as to the residence of Mrs. Rhea at the time of her death was, therefore, properly refused. Had the appellants instead of offering the will for cavaet, as was done, deposited it with the Court, or the Register of Wills, and then obtained an order of the Court directing the executor to produce the will for probate, the question of the testatrix's residence would have then been properly before the Court for determination.

The Orphans' Court held that, under the circumstances disclosed by the record, the executor was entitled to the custody of the will, and directed that it be delivered to him, and in this determination we agree.

*Order affirmed, the appellants to pay the costs above and below.*