John C. Brady, Assignee for the benefit of creditors of
the German Savings Institution of Erie, a corporation,
and Samuel C. Harple and John A. Dash, Jr., for
themselves and all others having debts against said
corporation, Appellants, v. John Elliott, John Gens-
heimer, William Selinger, Lloyd G. Reed, Charles M.
Reed, John Metzner, Catherine Stephen, George
Burton, Geo. P. Griffith, Franziska Claus, executrix
of H. V. Claus, deceased, and Ellen Taggart, exec-
utrix of J. W. Ryan, deceased, stockholders and mem-
bers of said German Savings Institution of Erie.

*Corporation—Contract—Agreement to contribute money to pay debts of
the company.*

Where several members of an insolvent association agree to contribute
a sum of money proportionate to their interests to pay the debts of the
association " whenever the solvent members of said association shall sign
this stipulation," the agreement cannot be enforced against any of the
members signing the agreement, unless all the solvent members sign it;
and voluntary payments made by some of those who signed the agree-
ment, in anticipation of its becoming binding, or in discharge of their
liability under the act of incorporation, do not estop them from asserting
that the agreement has no binding force.

Argued April 27, 1897.   Appeal, No. 125, Jan. T., 1897, by
plaintiffs, from decree of C. P. Erie Co., Sept. T. 1895, No. 3,
dismissing bill in equity.   Before STERRETT, C. J., WILLIAMS,
McCOLLUM, MITCHELL and FELL, JJ.   Affirmed.

Bill in equity to enforce a contract in writing.

The facts appear by the opinion of the court below by GUN-
NISON, P. J., which was as follows :

The material facts which are undisputed as I gather them
from the pleadings and the testimony are :

1. The German Savings Institution of Erie was incorporated
by Act of February 1, 1867, P. L. 130, and was authorized to
do a general banking business.

2. The said corporation entered upon the transaction of the

business for which it was incorporated, and continued the business until August 17, 1885, when, being insolvent, it made a deed of assignment of all its property to John C. Brady, one of the plaintiffs, in trust for the benefit of its creditors.

3.   On the 29th day of August, 1885, the agreement which is the foundation of the claim of the plaintiffs in this action, a copy of which is attached to the plaintiffs' bill, was executed, as follows, viz :

" We, the undersigned, for value received, hereby severally agree and bind ourselves to pay to John C. Brady, assignee of the German Savings Institution, of Erie, for the purpose of paying the debt of said institution, a sum of money proportionate to the interests we severally have in said institution, whenever the solvent members of said association shall sign this stipulation ; our respective interests therein, or shares of stock set opposite our respective names ; a part of this stipulation being that John Elliott shall pay to said institution the amount paid to him for his interest therein, with interest on same.

" In witness whereof we have this 29th day of August, A. D. 1885, hereunto set our hand and seals.

> " JOHN GENSHEIMER, [SEAL] 100 shares.
> " JOHN ELLIOTT, [SEAL] 368 shares.
> " J. W. RYAN, [SEAL] 10 shares.
> " WM. SELINGER, [SEAL] 5 shares.
> " LLOYD G. REED, [SEAL] all of mine.
> " CHAS. M. REED, [SEAL].
> " JOHN METZNER, [SEAL]."

The agreement also purports to have been signed and sealed by Catherine Stephen, George Burton and George P. Griffith ; but no proof of the execution of it by Catherine Stephen was offered, and the fact of its being sealed by George Burton and George P. Griffith is disputed.

5.   The assignee converted most of the assets of the bank into money, collected money from a number of those who signed the agreement and made these distributions among the creditors. A number of the signers of the agreement subsequently to the second distribution purchased claims against the insolvent corporation to a large amount, and the assignee in making the third distribution withheld the dividends payable upon the claims

so purchased, until an adjustment should be made of the amounts claimed by him upon the assignors thereof upon the agreement.

6. The dividends were as follows: No. 1, 33⅓ per cent on amount of deposits; No. 2, 33⅓ per cent on amount of deposits; No. 3, 20 per cent on amount of deposits.   No. 1 was paid sixty. days after the failure of the bank; No. 2, two months later, and No. 3, eight months after No. 2.

7. The liabilities of the bank were deposits, with
interest to August 17, 1885 . . . $190,302.47
Notes and mortgages, and interest paid on other
banks . . . . . . . . 25,648.42
Note paid to the Park National Bank of New York 10,086.10
Taxes and repairs, etc., paid by assignee . . 4,369.01

Total . . . . . . . $230,405.90

8. The assignee received from all other sources
than from the stockholders upon the agree-
ment of August 29, 1885 . . . $126,090.98
The assets in his hands unconverted amount to
(as appraised) . . . . . . . 1,150.00

Total . . . . . . . $127,240.98

9. The assignee has received from stockholders,
upon the agreement of August 29, 1885, in $70,418.75
all, viz: From Lloyd G. Reed. . $40,700.00
From John Elliott . . . 22,011.75
From John Gensheimer . . 5,940.00
From H. V. Claus . . . . 642.00
From John W. Ryan . . . 750.00
From Wm. Selinger . . . 375.00 .
He claims in this action to recover
From Lloyd G. Reed . . . . . $16,157.90
John Elliott . . . . . . . 3,693.05
John Gensheimer . . . . . 1,045.00
Estate of H. V. Claus . . . . . 754.09
George Burton . . . . . . . 3,492.25
George P. Griffith . . . . . . 3,492.25
and interest on said sums.

There were several disputed facts alleged by the plaintiffs, only one of which, it being in my opinion vitally important and essential to the right of the plaintiffs to recover that they should

sustain their allegations as to it, it is necessary for me to consider, viz : as to whether all the solvent stockholders signed the agreement of August 29, 1885. The evidence shows that Catherine Stephen was a stockholder and was solvent. There is no evidence as to the execution of the agreement by her.

[It is contended by the plaintiffs that William Varnum was not a stockholder; that the stock issued to him was in reality the stock of Lloyd G. Reed. But whatever may have been the relations between them, as to all the world excepting Mr. Reed I can come to no other conclusion than that Mr. Varnum was a stockholder. And the testimony shows him to have been solvent.] [1]

### CONCLUSION OF LAW.

The foundation of the plaintiffs' claim is the agreement of August 29, 1885. If that is not a valid agreement, the bill must be dismissed. By the express terms of the agreement it was to become operative " whenever the solvent members of said association " should sign it. Until all the solvent members signed it, it was not binding upon any. Catherine Stephen was a solvent member. Her name is attached to the agreement, but there has been no proof offered as to her signature, and her execution of the agreement has not been proved. William Varnum's name does not appear upon the agreement. He was a solvent member of the association.

[It is contended by the learned counsel for the plaintiffs that even if it be found that the agreement was not signed by all the solvent members of the association, the fact that several of those who signed have paid upon the agreement has been shown, and that those payments operate as an estoppel against those who have paid, estopping them from denying their liability to pay the balance of their proportion of the amount claimed by the plaintiffs. I cannot sustain the contention. There is no proof that anyone was led to do anything to his injury upon the faith of any such payment, whereby it would be inequitable to permit the truth to be shown, and thus an essential element of estoppel is wanting. The payments must be taken to have been voluntary. They do not estop those who made them from asserting that the solvent members did not all sign the agreement. Some evidence was offered that it was the understanding of all who signed that they constituted all the solvent members. It

did not fill the standard of evidence required to change the plain terms of a writing, and cannot be considered.] [2]

[The finding of the one fact that the solvent members of the association did not all sign the agreement is decisive of the case, and for that reason it is unnecessary to answer the various points, and find the several requests made by counsel in detail.

And now, December 2, 1896, it is ordered and adjudged and decreed that the bill of plaintiffs be dismissed at their costs.] [3]

*Errors assigned* were (1–3) portions of the opinion as above, quoting them.

*Wm. G. Crosby,* of *Fish & Crosby,* for appellants.—The principle that parol evidence may be given to explain a written agreement, so far as to give locality and identity to the subject-matter of it is upheld in Bertsch v. The Lehigh Coal & Navigation Co., 4 Rawle, 130 ; Nixon v. McCallmont, 6 W. & S. 159 ; Clark v. Adams, 83 Pa. 309 ; Greenawalt v. Kohne et al., 85 Pa. 369 ; Morris's Appeal, 88 Pa. 368 ; Gould v. Lee, 55 Pa. 99 ; 1 Greenleaf on Evidence (14th ed.), sec. 288 ; Barnhart v. Riddle, 29 Pa. 92 ; Browne on Parol Evidence, sec. 23 ; Scanlan v. Wright, 13 Pick. 523.

In equity the terms of a sealed contract may be varied, provided the variations have been acted upon : LeFevre v. LeFevre, 4 S. & R. 241 ; Canal Co. v. Ray, 101 U. S. 522.

Findings of fact by an auditor or master in chancery will be set aside by the Supreme Court, for a manifest and flagrant error : Chew's App., 45 Pa. 228 ; Fahnestock's App., 104 Pa. 46 ; Gilpin's.Est., 138 Pa. 143 ; Selser & Bro.'s Assigned Est., 141 Pa. 529 ; Milligan's App., 97 Pa. 525 ; Phillips's App., 68 Pa. 130 ; Hindman's App., 85 Pa. 466 ; Babcock v. Day, 104 Pa. 4 ; Jacob's Appeal, 107 Pa. 141 ; McConomy v. Reed, 152 Pa. 42 ; Hottenstein's App., 2 Grant, 301 ; Speakman's App., 71 Pa. 25.

When one signs as surety, a bond which in form is a joint obligation, upon condition that others are to sign the same with him, and it is delivered without the condition having been complied with, the instrument is invalid as to the one so signing as surety, unless the obligee, prior to the delivery, had no notice of such condition, or the surety, after signing waived the con-

dition: Mullen v. Morris, 62 N. W. Rep. 74; Sharp v. United States, 4 Watts, 21; Fertig v. Bucher, 3 Pa. 308; People v. Bostwick, 32 N. Y. 445; Whitaker v. Richards, 134 Pa. 191; Loew v. Stocker, 68 Pa. 226; Grim v. School Directors, 51 Pa. 219; Clarke v. Williams, 62 N. W. Rep. 1125; Van Norman v. Barbeau, 55 N. W. Rep. 1112.

*E. L. Whittelsey* and *Theo. A. Lamb,* for appellees, John Elliott and the estate of John W. Ryan.—Under the contract in question there could be no recovery unless it was signed by all the solvent members.

In the absence of mistake or fraud parol evidence of previous conversation is inadmissible to vary or explain a contract in writing, where it is free from ambiguity: Phillips v. Meily, 106 Pa. 536; Martin v. Berens, 67 Pa. 459; Caley v. Hoopes, 86 Pa. 493; McClure v. Ry. Co., 90 Pa. 269; Hunter v. McHose, 100 Pa. 38; Merriman v. Bush, 116 Pa. 276; Clarke v. Allen, 132 Pa. 40; Irvin v. Irvin, 142 Pa. 287.

*S. A. Davenport,* with him *J. M. Sherwin,* for appellees, Lloyd G. Reed and John Gensheimer.

*E. L. Whittelsey,* for appellees, Geo. P. Griffith and George Burton.

OPINION BY MR. JUSTICE FELL, May 17, 1897:

Unless shown to be erroneous, the finding that not all the solvent stockholders had signed the agreement of August 29, 1885, is conclusive of the plaintiffs' right to recover. The claim was based wholly upon this agreement, which was not binding unless signed by all the solvent stockholders. The condition was a valid one, and unless it was complied with no one was bound. We see no reason to doubt the correctness of the finding of the learned judge that two of the stockholders who did not sign were solvent. The contention that Varnum was not a stockholder cannot be sustained. True, he had not paid for his stock, and it may be that as between him and the transferror the equitable ownership was in the latter, but the transfer had been made with his knowledge and consent six years before. He considered himself a stockholder, and was so con-

sidered by all parties in interest, and at the time of the assignment for the benefit of creditors he was acting as secretary of the company and as a member of the board of directors. It i however unimportant whether he was a stockholder or not, as the failure to procure the signature of Catherine Stephen to the agreement was fatal.

The allegation that the parties agreed at the time as to which of the stockholders were solvent, and thus absolved the assignee from the duty of further inquiry is not sustained by the evidence. There was a general conversation among some of those who signed in relation to the solvency of the stockholders, but there was no express agreement, and nothing was said from which an agreement on the subject can be implied. Nor was there any ground of estoppel. Voluntary payments made by some of those who signed the agreement in anticipation of its becoming binding, or in discharge of their liability under the act of incorporation, do not estop them from now asserting that the agreement has no binding force. No one was misled to his injury or induced to change his position or to waive any right or remedy.

The decree is affirmed at the cost of the appellants.