# Wytheville.

Smith's Exor. v. Powell, Trustee, and Others.

98　431
d99　153

98　431
e102　751

98　431
103　684

98　431
105　756

July 5, 1900.

Absent, Riely, J.*

1. Chancery Pleading and Practice—*Final Decree—Subsequent Decrees.*—After a final decree has been entered in a cause, no further decree can be regularly entered therein.

2. Attorneys to Collect—*Authority—Acceptance of Note—Ratification.*—An attorney simply to collect a debt has no authority to receive anything but money for it, and if he accepts a note for it, no subsequent dealings of his with reference to the note, without previous authority or subsequent ratification of the client, can be deemed a ratification by the client.

3. Estoppel.—It is of the essence of an estoppel that the act relied upon as such should have been injurious and prejudicial to him who relies upon it as an estoppel.

4. Appeal and Error—*Decree by Default—Section 3451 Code—Finality.*—This court has no jurisdiction of an appeal from a decree by default until relief has been sought under section 3451 of the Code, by motion to the court in which the decree was rendered. When the time allowed by this section has expired, the decree becomes final and irreversible.

Appeal from a decree of the Hustings Court of the city of Roanoke, pronounced December 21, 1898, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

*Judge Riely was prevented by sickness from attending this term.

The opinion states the case.

*Scott & Staples,* for the appellant.

*Thos. W. Miller,* for the appellees.

KEITH, P., delivered the opinion of the court.

Smith's executor filed his bill in the Hustings Court of the city of Roanoke in June, 1890, stating that one Edmund Didier, the owner of three lots of land in said city, had entered into an agreement to sell the same to L. L. Powell, trustee for a number of beneficiaries, who were named, who were to take unequal interests in the said lot ranging from one-eighth to three-eightieths of the whole, as shown by the deed from Didier. The purchase price was $6,000, of which sum $2,833.33 was paid in cash, and for $2,566.66 Powell, trustee, executed his two negotiable notes, each for the sum of $1,283.33, payable at one and two years from date, and as to the residue, he assumed two other negotiable notes drawn by Didier, payable to the order of Webb and others. A vendor's lien was reserved to secure the two notes of $1,283.33, and before the maturity thereof the first of these notes to fall due was for value received transferred to the plaintiff's intestate. This note not having been paid at maturity, Smith's executor filed his bill, praying that the lots upon which it constituted a lien might be sold for its satisfaction, and that, if the fund thus produced proved insufficient to pay off the said note in full, the beneficiaries in the deed from Didier, who are named parties defendant in the bill, may be required to make good any deficiency. Powell, trustee, and all those interested in the trust were made parties defendant, and as to all of them the bill was taken for confessed. In January, 1892, this cause was referred to a commissioner to report an account of the liens upon the property. The commissioner reported, and there being no exception filed, his report

was confirmed, and a decree of sale was entered. A sale was made and confirmed, which proved inadequate to satisfy the liens, and the court thereupon disposed of the purchase money to satisfy charges superior to the lien of Smith's executor, and applied the residue to his debt, which left due to him as of the 1st of April, 1893, the sum of $867.23, and to Edmund Didier the sum of $1,833.33, with interest from June 24, 1890, until paid, and for these sums a decree was entered against the defendants jointly. This decree disposed of the whole subject. It sold the land; it distributed the proceeds; it ascertained the balance due; and it gave a decree against those who were, in the opinion of the court, liable for the sums ascertained to be due.

The only controversy in the suit thus far had been as to the measure of liability upon the defendants; their contention being that a personal decree should have gone against them only for their ratable proportion of the sum to be raised, to be ascertained by reference to their interests under the deed to them from Didier.

Upon the part of the plaintiff, it was claimed that they were jointly and severally liable for the whole amount, and this view was sustained by the court. There was some talk about an appeal from this decree, and thereupon Didier, who was anxious to get the money coming to him, undertook to bring about a settlement, as a result of which a Mr. Preston, who had purchased some of the interests in the suit, approached Mr. Scott, who was counsel of record for Smith's executor, and told him that he would pay upon the decree in the case to Smith's executor $608.15. This proposition was communicated by Mr. Scott to Didier in a note of April 24, 1893, the day upon which the decree under consideration was entered. On the following day (April 25, 1893), Didier and Preston went to Scott with a note drawn by Preston payable to Smith's executor, at the First National Bank of Roanoke, for $608. This note was endorsed by M. T. C. Jordan. Scott declined to receive this note, because,

as he said, he had no authority from the executor of Smith to take anything in payment of the judgment but money, but Mr. Preston stated that he had seen Booth, who was willing to accept the note in question. Mr. Scott replied that " if this is true I have nothing further to say," and, upon this express assurance that Booth had agreed to take the note in part payment of the decree, the receipt was given by Scott, which is filed in the record. A very short time thereafter it was discovered that Mr. Preston was mistaken in representing Booth as willing to accept his note as a payment upon the decree, and the parties interested were notified of the fact.

That Scott's action in agreeing to accept the note was predicated upon the statement that it met with the approval of his client is proved by himself and Didier, while Preston's account of the interview is far less clear and definite. He says that he does not recollect what conversation he had with Mr. Scott upon the subject. In this condition of the proof, we must accept the positive statements of Didier and Scott. There is no evidence whatever that Booth knew of the transaction on or before the 24th of April. On the contrary, he himself says in his deposition that he was wholly ignorant of it at the time, and repudiated it as soon as it came to his knowledge, and that the note was never at any time in his possession.

There is a check in the record drawn by L. C. Buckner to the order of R. E. Scott for $121.64. Buckner, who was one of the defendants against whom the decree had gone, of which we have spoken, had always earnestly insisted that he should only be bound for his ratable proportion, which he would pay after crediting the decree by the Preston note. The Preston note, however, was not paid. On the 4th of June, 1894, an order was entered in the case of *Smith's Executor* v. *Powell, Trustee,* directing a commissioner to report "whether or not the amount remaining due to the complainants, after applying the proceeds of sale of the land in the bill mentioned, has been paid to the

complainants, or to the parties named in the decree, or what parties have been paid, and by whom, and upon what agreement, if any, the sum so paid."

The decree of April, 1893, having been a final decree, no other decree could regularly have been entered in the cause. *Battaile* v. *Maryland Hospital for the Insane,* 76 Va. 63. No such objection to the proceeding, however, is made, because, as was stated at the bar, it was done by agreement among counsel. In execution of this decree, the commissioner took the evidence from which we have gathered the facts hereinbefore stated, and he reports that the note of $608.00 was received by Mr. Scott as a payment "under a mistake and misapprehension of the facts as they existed, and that, therefore, it should not be regarded as a payment. The commissioner is further of opinion that, had there been no mistake or misapprehension in regard to the facts, said attorney had no right to receive anything other than money in payment of said decree, unless expressly authorized so to do by the complainants in this cause, and that no such authority is shown by the evidence produced before him. The commissioner is further of the opinion that no act or words of said complainants, after the execution of the said note, amount to a ratification of the act of the said attorney in receiving said note." He then credits the decree with $48.17, which he considers as having been proved to be a proper credit, and reports that, subject to this credit, the amount of the decree of April 24, 1893, was still due and unpaid. To this report exceptions were filed, and the cause coming on to be heard before the Hustings Court, a decree was entered from which this appeal is taken, in which it is declared "that the note of M. P. Preston was so dealt with by complainants, after they had full knowledge of all the facts relating to its delivery, as to preclude them from refusing to allow it as a credit upon the decree entered on the 24th of April, 1893, and that defendants made payments to complainants upon the understanding that such pay-

ments exonerated them from any further liability, and that L. C. Buckner gave his check for $121.64 upon a like understanding, it is adjudged, ordered and decreed that upon the payment of the amount of said check," it should operate as a full satisfaction of the former decree.

That Scott had no authority as attorney to receive anything other than money in satisfaction of his client's demands is not controverted, and, that being the case, we do not perceive how Scott's conduct, assuming that the evidence established all for which defendants contend, could operate by way of estoppel to the prejudice of his client. It is plain from the evidence that he gave Scott no previous authority to act otherwise than as his attorney at law. It is equally plain from the evidence that he never, by word or deed, consented to or ratified the acceptance of Preston's note as a part satisfaction of the decree in his favor. But there can be no estoppel here in any view, or against any one. It is of the essence of estoppel that the act relied upon as such should have been injurious, and to the prejudice of him who relies upon it as an estoppel. The defendants have not been injured by anything said or done by the plaintiff or his testator. The note which was received was not due for a year, and within that period every one interested was informed of the truth of the matter; that it had been taken under a misapprehension of facts, and that Booth and Scott, his attorney, had declared that the Preston note would not be accepted, while they would be glad if he would pay the money which it was intended to represent. The Buckner check injured nobody. It was not collected, and if it had been, it represented only the amount for which Buckner was in any event liable.

But it is said that the defendants were prevented from taking an appeal. Booth, we reiterate, did nothing that estops him. He was not in any way responsible for the failure to appeal, and after appellees were informed of his position there was yet ample time to move in the Hustings Court to have the

decree corrected, and, failing in this, to apply to the Court of Appeals for such relief as they might have shown themselves entitled to.

We are of opinion that the Hustings Court erred in crediting the decree of April 23, 1893, by the amount of the Preston note.

Appellees seek under Rule IX. to assign as error the ruling of the court against them in that decree, by which they were held liable as partners or joint obligors. The decree, as we have seen, was taken against them by default, and, by virtue of section 3452 of the Code, this court had no jurisdiction to entertain a petition for appeal until relief had been sought under section 3451 by a motion to the court in which the decree was rendered. That motion was never made. The time within which it could be made has expired, and the decree has long since become final and irreversible.

It is to be observed that the proceeding upon which the controversy is now in this court does not involve any question at issue in the litigation which resulted in the final decree of April, 1893. It is wholly with respect to what has occurred since the rendition of that decree, so that no relief could, in any aspect of the case, be afforded under the rule which appellees invoke. This consideration is also a sufficient answer to the objection, presented by counsel in his oral argument, to the bill, which is copied into the record. There is no dispute before us which involves the pleadings in the original case, and whether the bill accepted by the court as a copy of the original bill be a true copy or not, is a matter of no moment.

Upon the whole case, we are of opinion that the decree complained of should be reversed.

*Reversed.*