In re ESTATE of Dorothy H. BURROUGH, Deceased.

Ann Burrough (Donovan) CENNAMO, Appellant,

v.

AMERICAN SECURITY & TRUST COMPANY et al., Appellees.

No. 71–1538.

United States Court of Appeals, District of Columbia Circuit.

Feb. 23, 1973.

Anthony D. Cennamo, Columbus, Ohio, George R. Douglas, Jr., Washington, D. C., were on the brief for appellant.

John L. Laskey, Washington, D. C., was on the brief for appellee Cynthia D. Reiche and Dean S. Reiche, Guardian ad Litem. Arthur C. Elgin, Washington, D. C., was on the brief for Janet T. Reiche.

Benton C. Tolley, Washington, D. C., was on the brief for American Security & Trust Co.

Before SOBELOFF,* United States Senior Circuit Judge for the Fourth Circuit, and TAMM and LEVENTHAL, Circuit Judges.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

LEVENTHAL, Circuit Judge:

On November 14, 1969, appellant filed a caveat contesting the validity of the will executed by her mother on March 5, 1969, some two months prior to death and a codicil thereto, executed on April 24, 1969. The caveat alleged fraud, undue influence and lack of testamentary capacity, and, after amendment, further alleged that a testamentary trust violated the rule against perpetuities.

Appellant is the sole heir at law of the testatrix. She is also the beneficiary under a 1966 will under which she would obtain substantially all of her mother's property, though full enjoyment would be postponed until she became 35.[1] The 1969 will and codicil would, if effective, operate to reduce appellant's interest substantially.[2]

Appellant consented to admission to probate of the 1969 testamentary documents but specifically reserved her right to file a caveat thereto. The appellant accepted distributions made to her pursuant to the will, both prior to and subsequent to her filing of the caveat, amounting to $17,000 as of September 3, 1970.

The trustee bank, and the guardians ad litem of those who are residuary beneficiaries under the trust established by the 1969 will, sought summary judgment.

The District Court, 318 F.Supp. 366, granted summary judgment on the ground that the acceptance of benefits under a will estops the recipient from contesting the validity of a will. The court relied on Utermehle v. Norment, 22 App.D.C. 31 (1903), aff'd 197 U.S. 40, 25 S.Ct. 291, 49 L.Ed. 655 (1905), and found that there was no supported contention of any fraud or misrepresentation which might operate to avoid the rule of estoppel.

Appellant relied in the District Court on the undisputed fact that the amounts she received under the 1969 will were less than the amounts she would have received under either intestacy or the prior will and emphasized (1) that there are no other beneficiaries who have received distributions under the will who would be affected by the challenge, (2) that under the traditional estoppel analysis, in order for a party to be estopped (here from objecting to the will's validity), there must be not only acquiescence in validity on his part, but also a change in position on the part of others, a condition which both existed in *Utermehle* and was relied on in the *Utermehle* opinion.[3]

The District Court quoted language from *Utermehle* which it considered to shed light on its rationale, and concluded that "the above quotation indicates that the Court found that these additional elements support estoppel, but that they

1. After some bequests not here relevant, the residuum of the mother's estate was to be placed in trust. Appellant was the sole income beneficiary of this trust, and the trustee was empowered to invade the principal in his discretion for her use and benefit. Upon reaching the age of 35, the trust was to terminate; and appellant was to succeed to the entire corpus.

2. Appellant was to receive a cash bequest of $5,000 and title in fee to certain realty. The residue of the estate was again placed in trust, with appellant the only income beneficiary. The trustee was directed to apply the sum of $10,000 from the principal for appellant's benefit (should she remarry and desire to purchase a home) and was vested with discretion to invade the corpus in her favor. The 1969 testamentary trust was to terminate upon the appellant's death; she was given no interest in the remainder.

Under the codicil, appellant's cash bequest was reduced to $3,000, and the trustee was directed to set aside only $5,000 from the principal in the event appellant wished to purchase a residence. The codicil also gave the trustee a discretionary power to invade principal for appellant's benefit.

3. Both in the Supreme Court, as appears below, and in this court, see 22 App.D.C. at 48–49, 53–54.

are not necessary elements." [4] However, the District Court did not take note of subsequent passages in *Utermehle*, both one which emphasized—with italics— that in a Massachusetts precedent relied on by the caveator, the legatee had returned the legacy before the executor had settled the account "or the position of any other person had been changed," and the concluding paragraph of *Utermehle*, set forth in our footnote, that emphatically stressed the change-of-position factor.[5]

We turn to Bowen v. Howenstein, 39 App.D.C. 585 (1913). The court there considered whether there was an estoppel on the sister of the testatrix by virtue of her having consented to probate, and thereafter accepted, and receipted, certain items of jewelry. Justice Robb's analysis ran as follows:

a. "The doctrine of estoppel *in pais* is founded upon principles of morality, and is intended to subserve the ends of justice."

b. It is the general rule that a party is not estopped by an act unless it operates to the prejudice of him who relies on it as estoppel.[6]

c. The statute provides for caveat by an interested person, within specified time periods, after admission to probate.

d. "[It] must be presumed that Congress, in the enactment of this provision, was cognizant of the general rule deductible from the foregoing cases, that a party will not be estopped unless the act relied upon has resulted in the prejudice of him who relies upon it as an estoppel."

This reasoning is clear and authoritative. Congress has provided in D.C. Code § 18–509 (1967):

> After a will has been admitted to probate, a person in interest may, within six months from the date of the order of probate, file a verified caveat to the will, praying that the probate thereof be revoked.

The only doctrine that Congress may fairly be said to have contemplated as a limitation by way of estoppel on the statutory right of caveat, which is set forth without qualification for all par-

---

4. The District Court quoted the following paragraphs:

> As to what is the law relating to a party taking the benefit of a provision in his favor under a will, there is really no foundation to dispute the proposition that he thereby is precluded from at the same time attacking the validity of the very instrument under which he received the benefit. 197 U.S. at 57, 25 S.Ct. at 296.

> *       *       *       *       *

> When *in addition* to the fact that he took a benefit under the will, a party has acquiesced in its validity for many years, and the opposing party in interest has acted upon such consent and acquiescence, and has so changed his position on that account that he cannot be restored to it, and where witnesses have in the meantime died, the reason for the rule upon which an estoppel is founded is *thereby greatly strengthened.* 197 U.S. at 58, 25 S.Ct. at 297 (emphasis added).

5. See 197 U.S. at 60, 25 S.Ct. at 297: "In this case the position of other parties to this litigation has most materially changed, as has already been shown

. . . while the plaintiff in error has been also guilty of extreme negligence even in attempting to discover what he alleges are facts. We are satisfied that the plaintiff in error is estopped from now contesting the will, and that great injustice would result from the overturning of the principle adjudged in so many cases."

6. Thus the court quoted from Reynolds v. Adden, 136 U.S. 348, 352, 10 S.Ct. 843, 845, 34 L.Ed. 360 (1890): "[The acts] induced no conduct on the part of the appellant, or of any of the creditors of John II. Adden, which operated to their prejudice. They contained no element of estoppel."

And from Smith's Ex'r v. Powell, 98 Va. 431, 36 S.E. 522, 524 (1900): "It is of the essence of estoppel that the act relied upon as such should have been injurious, and to the prejudice of him who relies upon it as estoppel."

And to like effect the court quoted from Brady v. Elliott, 181 Pa. 259, 37 A. 343 (1897), and cited Lincoln v. Gay, 164 Mass. 537, 42 N.E. 95 (1895); Drouin v. Boston & M. R. Co., 74 Vt. 343, 355, 52 A. 957, 960 (1902).

ties in interest, is that provided by the general law of estoppel; and that requires that the party relying on an act as an estoppel sho.⁷ prejudice therefrom.

■ There is requisite prejudice and estoppel when a party makes a claim outside the will after taking property under a will to which he would not otherwise have been entitled. And so in Gibson v. Gibson, 53 App.D.C. 380, 292 F. 657 (1923), the court held, in another opinion by Justice Robb, that the principle of *Utermehle* prevented a husband from both claiming curtesy and at the same time taking an interest under the will that was given to him in lieu of curtesy. This was held to be inequitable, and the husband was required to elect one or the other. But there is no comparable problem of equity and election when the claimant, as here, is entitled to the property taken under the will even if he succeeds in the claim outside and against the will.

It cannot be said that there is any inherent inequity in a relative's seeking to break a will when she has taken under the will. Her claim is that the deceased intended to provide amply for her and that this was thwarted by the intervention of say, undue influence or failure of capacity.⁷

■ This brings us, finally, to appellee's claim that estoppel may be avoided only if there has been a prior proffer of the item received. The requirement of proffer is not unqualified but calls for application in the interest of justice. In Maryland, whose rulings are paid partic-

ular heed in trust and estate questions, the court put it that it is "only in the event that his contemplated attack upon the will would be successful that there would be any occasion for him to refund the legacy paid to him by the executor."⁸ There may be other considerations of justice bearing on the tender problem.⁹ We do not pursue the problem. It suffices that the lack of proffer prior to suit is not an absolute bar, and that whether and on what terms a proffer should be required was not in this case considered by the District Court.

\* \* \*

■ The voice of our dissenting colleague prompts us to ponder further on this case. We are not troubled by the accusation that stare decisis has been scuttled. Our opinion reflects an attentive regard to precedent—appreciative of statements in estoppel opinions that focus on inconsistency, but appreciative, too, that these cannot be taken broadside without regard to accompanying facts and statements, reflecting the settled principle that estoppel requires prejudice wrought by detrimental reliance.

What we are concerned with in this epilogue is whether some sensitive nerve of justice would be rightly pained by reversal in this case. Is the "inconsistency" of a beneficiary in and of itself an affront to Justice? Should this court go beyond the actual decisis of precedent, and fashion estoppel in law out of inconsistency even in the absence of detrimental reliance or like prejudice? On occasion we have scrapped

7. We expressly do not consider the situation of a will that provides a legacy given on condition that no attempt be made to declare the will invalid. *Cf.* Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793 (1898).

8. Schmidt v. Johnston, 154 Md. 125, 133, 140 A. 87, 90 (1928). *See* Kelley v. Hazzard, 96 Oh.St. 19, 117 N.E. 182, 184 (1917): "There is, however, another well-settled exception to the tender back, and that is where the party chargeable with the tender would, in the event of his prevailing in the suit, receive at least as much as he now has in his possession;

for, in such an event, no tender is necessary, as no harm can come either to the estate or to any interested party."

9. *E. g.*, whether the legacy is needed by the beneficiary for a reasonable standard of living; whether the legacy is being used to finance litigation of minimum substance that will put heavy costs on the estate and other beneficiaries or that will irreparably prejudice them; whether the legacy was of property of a unique and irreplaceable nature, to which the caveator would not be entitled if the will were set aside.

an historic rule that appears inadequate to modern conditions. E.g., Hatch v. Riggs National Bank, 124 U.S.App.D.C. 105, 361 F.2d 559 (1966). Here, however, it would run contrary to the needs of today to scrap the historic requirement of prejudice so as to make inconsistency alone a legal barrier. The rule that once prohibited a litigating party from asserting inconsistent claims in the same pleading has been relegated to the dustbin of legal history, along with the nice distinctions of the common law forms of action. The Supreme Court has brushed aside those doctrines in which inconsistency of position had come to be viewed as a bar. See Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). In the case before us, there is no shred of waiver, all rights having been painstakingly preserved, nor is there pursuit of relief and remedies that are inconsistent.

In this case the interest of justice is furthered by our attentive regard to precedent, and to principle both settled and sound; and these may not rightly be subordinated to symmetry simpliciter. Our ruling retains estoppel in case of detrimental reliance or like injustice. We are confident that the District Court on remand will be fully alert to the principle of justice reflected in the settled doctrine applied in our ruling.

Reversed and remanded for further proceedings not inconsistent with this opinion.

TAMM, Circuit Judge (dissenting):

I cannot concur in an opinion that elevates to the dignity of legal dogma the facetious vaunt, "Heads I win—Tails you lose." Again the majority flouts what was known among the ancients as "stare decisis" [1] (the nature of that doctrine is now imperfectly understood and possibly incapable of definition with the vocabulary that remains to us).

Craftily recognizing which side her bread is caviared on, our appellant skillfully acclaims by seizure those provisions of the now challenged will which provided largess to her and having exhausted available advantages and benefits she now brazenly challenges the validity of the very document whose terms she utilized to her own benefit. This subordination of veracity is, or course, carried out without any distasteful return to the estate of the assets she has received and utilized. My brethren, whose sincerity I do not question (to the pure all things are pure), with more feeling for a piquant image than for objective facts see in this situation the conduct of a dove rather than an albatross. To make a paradigm of appellant's greed, at the possible expense of other named beneficiaries of testator's declared intentions, is for me the jettisoning of virtually all the historically proven cases teaching that the seeker of justice must be a doer of justice. Our opinions through this century, presumably at least, recount a record of injus-

---

1. *See* Bowen v. Lowenstein, 39 App.D.C. 585, 590 (1913):

> While it is undoubtedly the rule that a person who takes property under a will must be presumed to have elected to abide by the will in preference to his rights as an heir at law, in the absence, of course, of fraud, imposition, or misrepresentation, we have found no case holding that *the temporary acceptance of such a benefit*, resulting in no disadvantage to other parties, amounts to an estoppel. On the contrary, it has been held that the *return of a legacy*, the condition of the parties not having been changed,—that is, no prejudice having resulted from the *temporary acceptance* of the legacy,—leaves

> no room for an estoppel. (Emphasis supplied and citations omitted.)

*See also* Utermehle v. Norment, 197 U.S. 40, 57, 25 S.Ct. 291, 296, 49 L.Ed. 655 (1905) and cases cited therein:

> As to what is the law relating to a party taking the benefit of a provision in his favor under a will, there is really no foundation to dispute the proposition that he thereby is precluded from, at the same time, attacking the validity of the very instrument under which he received the benefit.

*See also* Cennamo v. American Security & Trust Co., 318 F.Supp. 366 (D.D.C. 1970). The wealth of state cases holding as we have held in the past is so great as to negate citation.

tices put right by our legal objectivity but my brethren's majority opinion causes my admiration of our accomplishments to melt into suspicion. Current popular recognition of a code of mini-morals is strengthened by today's ruling, since the court vaults the bounds of fairness principles and will undoubtedly shock the conscience of legal scholars. To validate appellant's unconscionable chicanery upon the basis assigned by the majority certainly requires the most novel reasoning since Lewis Carroll.[2]

More distressing than the immediate impact of this majority opinion on the fortunes of those immediately involved herein, however, is the ease with which the court again narcotizes the earlier opinions which I naively thought had established and defined the law governing factual situations akin to our present record. Perhaps by today's and tomorrow's standards these are normal times and the majesty of the law is to be built upon an ever-changing proliferation of untested and unproved panaceas. The stream of time has washed away the dissoluble fabric of many other disciplines, but if it is to flood away from the courts the integrity of the law as a science producing certain rules of decision, then appellate courts will be reviewing by ambush. No doubt respect for the established tenets of the law is regarded as an idolizing of meaningless ancient landmarks by those who in their search for utopia cultivate the preposterous. It is a tired truth that courts' opinions seriatim and subjectively working towards the "GREAT WHEN" end not on a note of exhaustion but of exasperation.[3] Such brave but legally limpid judicial excursions are alternately blessed, then tarnished, then cursed. Although change is today's great constant, legal wanderings far from the solid foundations of objective interpretations of governing case law edge precariously close to an outright abandonment of the basic principle that ours is a government of laws and not of men. Although the belief that the basic provisions of our law established a predictable cornerstone upon which is built the judicial machinery apparently went out with Mc-Guffey's readers, the hard fact remains that this so-called creative law has not established a track record for lasting solutions of mankind's day-to-day legal problems. Undiscouraged, however, my brethren bravely pursue their uncharted voyage into THE LAND OF TRY AGAIN.

I write these words, not as a jeremiad, but in the belief that unless the courts adhere to the guidance of fixed principles, we will soon bring objective law to its sepulcher.

2. See, e. g., L. Carroll, Alice's Adventures in Wonderland (Orig. pub. 1865), and L. Carroll, Through the Looking Glass (Orig. pub. 1872).

3. An account of our confused and confusing roaming through the labyrinth of the insanity defense in criminal cases is a record of eighteen years from Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862 (1954), to United States v. Brawner, 153 U.S.App.D.C. 1, 471 F.2d 969 (1972), in which we unwaiveringly in each successive case abandoned an earlier profound declaration of what we had (temporarily as it turned out) declared would be the governing law. For trial courts and the bar, the law was recognized as being whatever we would declare it to be in our next opinion.