345 A.2d 477 (1975)
In re ESTATE of Paul HIMMELFARB, Deceased.
Julian HIMMELFARB, Appellant,
v.
Benjamin GREENSPOON et al., Appellees.
No. 8663.
District of Columbia Court of Appeals.
Argued March 13, 1975.
Decided September 30, 1975.
*479 Louis Ginberg, Washington, D. C., for appellant.
Bernard Margolius, with whom Philip N. Margolius, Washington, D. C., was on the brief, for appellee Paul and Annetta Himmelfarb Foundation, Inc.
Benjamin Greenspoon, Washington, D. C., for appellee executors.
Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.
HARRIS, Associate Judge:
This case involves the second caveat filed to contest the will (and four codicils thereto) of Paul Himmelfarb.[1] The issue is whether appellant Julian Himmelfarb, one of the decedent's eight children, is barred by either res judicata or equitable estoppel from filing a caveat in the prolonged litigation concerning his father's estate.
Appellant's caveat makes basically the same allegations as those set forth in an earlier caveat which had been filed by one of his sisters, Jean Horwitz. The first caveat was compromised. Appellant did not sign the settlement agreement, however. Several days before the settlement was executed, he notified his brothers and sisters and the presiding judge by letter that he objected to the settlement and would pursue his judicial remedies. Nonetheless, the will and codicils were admitted to probate. Four and one-half months thereafter, appellant filed his caveat, in reliance upon D.C.Code 1973, § 18-509. It was dismissed with prejudice by the trial court. Under the circumstances presented, we conclude that the second caveat is not barred and that the trial court's order of dismissal must be reversed.

I
The decedent died on January 16, 1968, leaving an estate valued at approximately $1.7 million.[2] Surviving him were all eight of his children and numerous grandchildren and great-grandchildren. The will, as modified by the codicils, would leave $10,000 to each of decedent's children.[3] The bulk of the estate was to go to the residuary legatee, appellee Paul and Annetta Himmelfarb Foundation, Inc., which was established by the decedent during his life for religious, charitable, and educational purposes. The decedent specified that the foundation should be terminated, and its assets distributed in accordance with its charter, within 15 years after his death.[4]
*480 The appellee executors who were nominated in the will[5] petitioned the United States District Court for the District of Columbia for probate of the will and codicils.[6] Jean Horwitz filed a caveat, seeking to have probate denied. She alleged primarily that the decedent had been mentally and physically incapable of executing the will and codicils, and that the testamentary instruments came into being through fraud, deceit, undue influence, duress, and coercion.
Pretrial proceedings concerning that caveat continued for five years. All of the decedent's heirs at law, next of kin, and legatees were named as defendants, including those whose bequests had been revoked by codicils. Appellant, who was served personally, was among more than 80 parties who were joined as defendants. The court appointed a guardian ad litem to represent the minor defendants. On June 6, 1972, a proceeding was held before a pre-trial examiner at which many of the parties either appeared in person or were represented by counsel. Appellant asserts that he was not present, but this point is in dispute. The line for his signature is blank on the written statement which resulted from that pretrial proceeding.
The District Court dismissed the suit, with prejudice, as to most of the defendants on December 5, 1972. The defendants who remained after that order were the decedent's eight children, the foundation, and the nominated executors.
On May 18, 1973, a consent order was signed by the District Court judge, dismissing the caveat proceedings with prejudice and directing that the will and codicils be admitted to probate. The consent order incorporated an agreement entered into by Mrs. Horwitz, the foundation, and the nominated executors (who, as noted, include two of the decedent's children). It was signed by attorneys representing those parties. Appellant and four other children of the decedent did not participate in the agreement.[7]
Beyond providing for the dismissal of Mrs. Horwitz' caveat, the agreement gave her the right to receive reports of the foundation's operations and to name charities for later receipt of one-eighth of the foundation's assets. Additionally, it provides that Mrs. Horwitz will receive her $10,000 bequest, notwithstanding the will's in terrorem clause.[8]
The record does not indicate that appellant was given formal notice of the impending settlement.[9] Appellant, however, received actual notice in some manner. He wrote to his brothers and sisters and to the District Court judge, several days before the settlement, stating that he objected to the compromise and intended to contest the will himself. To his family members, in a letter dated May 5, 1973, appellant stated:
I have today been advised of an imminent out of court settlement of the Jean Horwitz contest to our father's will.

*481 This is to inform you of my intention to bring an immediate independent action as soon as my attorney is available to prepare the necessary papers.
Two days later, appellant wrote to the trial judge. He informed the court that he had written to his brothers and sisters, and attached a copy of that letter. Additionally, he stated:
I have always supported a complete and open court hearing of the allegations in [Jean Horwitz'] action and didn't feel it was necessary to burden the court with duplicity in initiating an independent action. However, with the chances of her suit now, perhaps, not accomplishing this, I should like to advise the court of my intentions to proceed with whatever appropriate means to contest the will as soon as my attorney returns from a brief out of the city obligation.
It is undisputed that appellant made the signing parties aware of his objection to the compromise by means of these letters. However, they elected to proceed with the settlement.[10] Perhaps they believed there was only a slight risk that appellant actually would proceed with a contest since he had been relatively inactive in the litigation up to that point.[11]
On June 27, 1973, the District Court admitted the will and codicils to probate and granted letters testamentary to the nominated executors. On November 14, 1973, appellant filed his caveat in the Superior Court, making essentially the same allegations as those in Mrs. Horwitz' earlier caveat.[12] He joined as defendants all the parties (more than 80) who had been named in the first caveat before the District Court dismissed that suit with prejudice as to most defendants.
The Superior Court granted a motion to dismiss appellant's caveat, basing its decision on principles of res judicata and equitable estoppel.[13]

II
Appellant first argues that the District Court's consent order of May 18, 1973, is not res judicata as to him. We agree. If there had been a trial of the issues raised by Mrs. Horwitz' caveat, then appellant, having received personal service concerning the initiation of the first caveat, would be bound by the outcome. See Dugan v. Northcutt, 7 App.D.C. 351, 352-55, 362-68 (1895). However, the consent order, based on an agreement among some of the other parties, did not constitute an adjudication *482 of the issue of decedent's testamentary capacity and the alleged exercise of fraud and undue influence.
In appropriate circumstances, a judgment entered by consent can have the same res judicata effect as a judgment entered after answer and trial. See Universal C.I.T. Credit Corp. v. Gogos, D.C. Mun.App., 184 A.2d 197, 198 (1962); Menendez v. Saks & Co., 485 F.2d 1355, 1363 (2d Cir. 1973), cert. granted sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba, 416 U.S. 981, 94 S.Ct. 2382, 40 L. Ed.2d 758 (1974). However, "[a] consent judgment is binding only upon those parties consenting thereto." Botz v. Helvering, 134 F.2d 538, 545 (8th Cir. 1943). Here, not only did appellant not consent, but he put the parties and the court unequivocally on notice that he objected to the compromise. Under such circumstances, res judicata does not bar the second caveat.
The trial court's reasoning, in part, was that because a will contest is an in rem proceeding, a consent judgment should bind all interested parties to the extent that it determines the validity of the will. However, none of the cases relied on in support of that proposition presents a situation like the one here, i. e., where the party filing the second caveat gave advance notice of his objection to the settlement of the first caveat. Rather, those cases involve parties who had notice of the original contest, but remained silent throughout the entire proceeding, including the settlement phase. See In re Kierstead's Estate, 128 Neb. 654, 259 N.W. 740, 741-44 (1935); cf. Bailey v. McLain, 215 N.C. 150, 1 S.E.2d 372, 373-77 (1939). See also In re Golden's Estate, 4 Cal.2d 300, 48 P.2d 962, 966 (1935); In re Will of Cox, 254 N.C. 90, 118 S.E.2d 17, 20 (1961), aff'd, 257 N.C. 160, 125 S.E.2d 395 (1962). We do not decide whether we would apply res judicata if such facts were presented. In the circumstances of this case, we hold that the consent order of May 18, 1973, does not bar appellant's caveat on the basis of res judicata.
However, the District Court's subsequent order of June 27, 1973, which admitted the will and codicils to probate, does have an effect on appellant's rights. Since the instruments have been admitted to probate, following appropriate notice and proof, the burden of persuasion even as to execution now must rest on the caveator. See Curtis v. Curtis, 156 U.S.App. D.C. 374, 376-77, 481 F.2d 549, 551-52 (1973). This rule as to burden of persuasion stems from the fact that a trial judge may not admit a will to probate without considering the proofs of the will's execution. D.C.Code 1973, § 18-504. The court must be satisfied "that the will was duly executed and the testator was competent to execute it" before admitting it to probate. D.C.Code 1973, § 18-507. Those Code sections contain language stating that they apply only when no caveat is pending. When a caveat is filed before a will's admission to probate, as occurred here, the court must wait until the caveat has been disposed of before admitting the will. D. C.Code 1973, § 18-508.
The District Court property admitted the documents to probate during a period in which no caveat was outstanding, that is, after the first caveat had been dismissed with the caveator's consent, and before the second caveat was filed. The court had available the sworn statements of witnesses to the will, as specified by D. C.Code 1973, § 18-504,[14] and the record shows that the required notice had been given. See Curtis v. Curtis, supra, at 376, 481 F.2d at 551. We share the view of the Court of Appeals for the District of Columbia *483 Circuit that "allocating the burden to contestants after admission of the will to probate has the beneficial effect of encouraging early caveats, thereby decreasing uncertainty." Ibid. the burden of persuasion on the issue of due execution now rests on appellant.[15]

III
Appellant also asserts that the doctrine of equitable estoppel cannot bar his caveat. We agree, although the facts come close to presenting a proper estoppel situation.
The right to file a caveat after a will had been admitted to probate is provided in D.C.Code 1973, § 18-509. It states:
After a will has been admitted to probate, a person in interest may, within six months from the date of the order of probate, file a verified caveat to the will, praying that the probate thereof be revoked.
Probate normally is not a finality as to interested parties until the expiration of the prescribed period. See Bowen v. Howenstein, 39 App.D.C. 585, 590 (1913); Craighead v. Alexander, 38 App.D.C. 229, 235 (1912). Some older cases refer to the right to caveat during this period as being absolute. See, e. g., Craighead v. Alexander, supra at 235. However, equitable estoppel long has been recognized as creating a possible limitation on the statutory right to file a caveat within the stated time. See In re Estate of Burrough, 154 U.S. App.D.C. 259, 261-63, 475 F.2d 370, 372-74 (1973); McNamara v. Miller, 106 U.S. App.D.C. 64, 66, 269 F.2d 511, 513 (1959); Bowen v. Howenstein, supra at 587-90; Craighead v. Alexander, supra at 236.
In applying the doctrine of equitable estoppel, "[t]he vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Goodman v. Dicker, 83 U.S.App.D.C. 353, 354, 169 F.2d 684, 685 (1948), quoting Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618 (1880); see Parker v. Sager, 85 U.S.App. D.C. 4, 8, 174 F.2d 657, 661 (1949). An essential element of estoppel is prejudice caused by detrimental reliance. See In re Estate of Burrough, supra, 154 U.S.App. D.C. 154 at 262, 475 F.2d at 373; Bowen v. Howenstein, supra at 587-88.
The trial court correctly noted that appellant's behavior was dilatory. During the several years in which the first caveat was pending, he took little part in the proceedings and never aligned himself with his sister as a party plaintiff.[16] For a substantial period of time, it may have appeared to those who ultimately signed the settlement agreement that appellant, by his inaction, was indicating a willingness to acquiesce in whatever steps Mrs. Horwitz took with her caveat. Equitable estoppel might well bar appellant's caveat if he had remained inactive up to and including the time of the settlement. In such a situation, *484 the signing parties could argue that they reasonably relied to their detriment on appellant's silence when they decided to compromise the original caveat rather than proceed with a trial of the issues.
However, appellant ceased to be inactive in time to give clear notice, several days in advance of the settlement, that he would not acquiesce in the compromise and would contest the will. In proceeding with the settlement, the signers knowingly risked the possibility that appellant would bring another contest, as he had stated he would.[17] We hold that the doctrine of equitable estoppel does not bar appellant's caveat.
Reversed and remanded.
NOTES
[1] We recognize that a proceeding challenging a will is initiated by the filing of a "complaint", rather than a "caveat". See Super. Ct.Prob.R. 10(a). While it appears that the Register of Wills and the probate bar encourage a wider use of the term "complaint", the District of Columbia Code continues to contain the word "caveat". See D.C.Code 1973, §§ 18-507 through 18-509. Accordingly, we use "caveat" herein as an abbreviated reference to a complaint to deny or revoke probate of a will.
[2] As of May 22, 1968, the Office of the Register of Wills listed the estate as comprising $520,000 in real estate, $1,218,835.02 in personal property, and $3,500 in debts. A collector was appointed by the court to manage the estate's assets during the pendency of the will contest.
[3] The decedent stated in his will that during his life he had "made ample and substantial provisions for [his] children by gifts and by the establishment of several trusts for their benefit".
[4] The later codicils revoke a number of specific bequests to individuals and organizations which had been made in the will and earlier codicils. Typically the revocations are accompanied by the explanation that the decedent had advanced the stated amounts of money to the legatees during his life so as to give them immediate use of the funds.
[5] Named as executors were Ada Naiman and Frances Wolf (two of decedent's daughters), Benjamin Greenspoon (husband of one of decedent's granddaughters), and Bernard Cooper (one of decedent's grandsons).
[6] At the time, probate jurisdiction was in the District Court. See D.C.Code 1973, § 11-921(a)(5)(B).
[7] Appellant is the only non-signing child who subsequently filed a caveat. Caveats by any of the others would be barred by the six-month limitation period specified in D.C. Code 1973, § 18-509.
[8] The in terrorem clause provides that any legatee who opposes probate of the will, or attempts to have any portion of it set aside, will forfeit his or her legacy.
[9] Appellant, however, was among those who were sent copies of Mrs. Horwitz' Motion To Dismiss as to Certain Defendants in December of 1972. That motion stated in part: "The plaintiff and defendants herein are in the process of effecting a settlement of this action.. . . ."
[10] In an affidavit, Mrs. Horwitz stated that at the settlement conference the District Court judge read aloud the letter he had received from appellant. She said: "A brief pause followed in which nothing was said. The settlement conference then commenced, and there was no comment by anyone as to the letter."

The Horwitz affidavit and an affidavit from appellant were submitted to the Superior Court after appellant's caveat was dismissed. Appellant asserted that they were relevant to the issue of equitable estoppel. The judge denied appellant's motion to include the affidavits in the record, on the ground that he had not considered them in reaching his decision. The court's denial of that motion is assigned as error. However, because of our disposition of this appeal, we do not reach that issue. In any event, the trial judge stated during a subsequent hearing that his conclusion would have been the same if the affidavits had been before him.
[11] See note 16 infra.
[12] Jurisdiction of probate matters, including pending cases, had been transferred from the District Court to the Superior Court by the Court Reorganization Act of 1970. See D.C. Code 1973, § 11-921(a)(5)(A); cf. In re Estate of Wiley, D.C.App., 331 A.2d 343, 344 n. 1 (1975).
[13] Although the term "equitable estoppel" was not used in the trial judge's opinion, it is apparent that it provided an alternative ground for his decision. The court stated, for example, that "[j]udicial sanction of such dilatory behavior would be an undeserving boon to the plaintiff", and that "[t]he behavior of plaintiff is the embodiment of the court's concern." During the later hearing on motions to expand and correct the record, the trial judge explicitly stated that equitable estoppel had been one of the grounds for his decision.
[14] The witnesses' sworn statements are on file with the Register of Wills for the District of Columbia. The record on appeal includes a memorandum from the Register of Wills to the District Court judge, stating that the execution of the will and four codicils had been duly proven.
[15] In subsequent proceedings on this caveat, it would be advisable for the trial court to treat appellant's complaint as effecting a reopening of the prior caveat proceeding, rather than as a totally separate action. Such a procedure would avoid the needless repetition of issuing summonses to the many defendants whose interests were determined, by dismissal with prejudice, in the earlier contest based on the same issues. (Although the prior caveat was filed in the District Court, it would be proper to reopen it in the Superior Court, since probate jurisdiction over pending cases has been transferred to the latter court.)
[16] On May 8, 1968, appellant wrote a letter to the court objecting to the appointment of Benjamin Greenspoon as collector for the estate. (The court, following a hearing, appointed John F. Cooney, who had served as conservator before decedent's death.) On June 3, 1969, appellant attended the taking of Jean Horwitz' deposition and participated by asking some questions.
[17] "Usually a will contest cannot be settled safely and permanently unless the agreement includes as parties thereto all the heirs at law and next of kin of the decedent, and the executor and all legatees and devisees named in the will offered for probate." 2 V. Mersch, Probate Court Practice in the District of Columbia § 2071 (2d ed. 1952).