ALFRED G. SCHMIDT *v.* MARIE AGNES JOHN-STON.

[No. 36, October Term, 1927.]

*Decided January 10th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*C. Arthur Eby,* with whom was *C. Craig Fears* on the brief, for the appellant.

*J. Cookman Boyd,* with whom was *Emil Budnitz* on the brief, for the appellee.

PARKE, J.,
Catherine Schmidt died testate on February 5th, 1924, and her will, bearing date January 30th, 1924, was admitted to probate by the orphans' court of her domicil on February 11th, 1924, when letters testamentary were granted to her executrix. After the usual provisions for the payment of debts and funeral expenses, the testatrix bequeathed to each of her three sons the sum of five hundred dollars, and devised and bequeathed the residue of her property to her

daughter, Marie Agnes Schmidt, now Marie Agnes Johnston, for life, "with full power and authority to the said Marie Agnes Schmidt to sell, mortgage, lease, convey or otherwise dispose of all or any portion of said property and estate, and appropriate the proceeds of such disposition to her own use and from and immediately after the death of my said daughter" over to her said three sons equally, with a provision that if any of the said sons should die before the daughter leaving issue then living, such issue should take the share of the ancestor, but if he should so die without issue, the surviving brother or brothers would take.

Alfred G. Schmidt, the appellant, is one of the three sons of the testatrix, and he was paid, and executed a release for, his legacy of five hundred dollars. The date of this payment and release is not found in the record, and while it is ordinarily the duty of the executor to settle the estate and pay the legacies within twelve months after the grant of letters testamentary, the question whether it should be presumed that the payment of the legacy had been made within that period need not be here determined, since, while the date is not given, it does affirmatively appear that the legacy to the appellant had been paid at least a few months before the proceedings were instituted in the pending case. See *Lark v. Linstead & Heath,* 2 Md. 420, 427; *Bagby's Executors and Administrators,* sec. 111; Code, art. 93, secs. 1, 2, 3, 123; *Handy v. Collins,* 60 Md. 229, 235, 236.

The first proceeding in the instant cause was a caveat to the will filed by the appellant on February 10th, 1927, the last day within the statute of limitations. Code, art. 93, sec. 352. The grounds of attack were that the will had been procured by the undue influence of Marie Agnes Johnston, who was at once the daughter, executrix, devisee and residuary legatee of the testatrix, and of others unnamed; and that the testatrix was at the time of signing the will, and had been for some time previous, and thereafter until her death, of unsound mind.

The caveat contained an averment that the petitioner was "ready, willing and able to refund and turn back to said

estate the aforesaid sum of $500 in the event that said will is set aside." The caveat has this further explanatory and minifying paragraph:

"That while your petitioner accepted the sum of $500 which by said paper writing was provided as a legacy in his favor, and while he executed a release therefor to the executrix named in said alleged will, he did so without knowledge of facts respecting the issues in this case, which facts have since the probate of said will and since the receipt of said alleged legacy and the execution of said release by him, and within the past few months become known to him; that he received said alleged legacy in his favor without full knowledge of his rights and of other important facts concerning said estate; and that he has since the probate of said will and since the receipt of said alleged legacy acquired knowledge of such facts; that your petitioner believes that he has been deprived of certain rights which he would have as an heir at law of said Catherine Schmidt, and he finds that the only remedy he has for obtaining justice and his legal rights is by way of a proceeding to contest the validity of said will."

The caveat concluded with the prayer that the probate of the will be annulled and that the letters testamentary be revoked.

The answer of the executrix denied all the material allegations of the caveat, except that of the caveator's ability, readiness, and willingness to refund, and thereupon the caveator filed a petition, whose allegations were a repetition of the averments of the caveat, and which prayed that issues be framed and transmitted to a court of Baltimore City having common law jurisdiction. The issues proposed were five in number and were designed to present the question of the knowledge of the caveator, at the time of his receipt of, and release for, the legacy, of the facts and circumstances (1) attending the making and execution of the will; (2) material to the validity of the will; (3) relating to the mental capacity of the testatrix to execute a valid deed or contract;

(4) relating to the question of undue influence that may have been exercised and practiced upon the testatrix in connection with the execution of her said will; or (5) showing the amount and character of the estate of the testatrix with the accompanying knowledge of the caveator of his legal rights in and to said estate.

The matter came on for hearing on the pleadings, and the Orphans' Court of Baltimore City declined to grant the issues on the preliminary questions of fact raised by the caveat and answer, and dismissed both the caveat and petition. A few days after this action, a second petition was filed by the caveator, reciting the pleadings of the parties and the action of the orphans' court. There was, also, a statement that the court proceeded upon the ground that the petitioner "had not sufficiently explained in said caveat the apparent inconsistency of his conduct in attacking a will under which he had received a legacy." The petition asked the court to rescind that portion of its order dismissing the caveat, and to grant him leave to amend his caveat "in order to meet the views of" the court "by explaining more fully the apparent inconsistency of his conduct as aforesaid." The theory of this second petition was that the petitioner was either entitled to submit evidence to the orphans' court in support of the allegations of the caveat in explanation of his apparently inconsistent conduct, or to amend the caveat in order to give a further explanation.

The orphans' court refused to entertain this second petition, and the appeal in this case is by the caveator from these two successive adverse orders, which will be considered in their inverse order.

1. The allegations of the second petition were in substance but a repetition of what had been submitted to the orphans' court when it passed its first order. The refusal of leave to amend the caveat in order to make the allegations more specific is not reviewable here, since the application was made after the orphans' court had passed a final order dismissing the caveat and refusing to grant issues to be sent to a common law court for trial, and the rescission of its order and

leave to amend the caveat had then become a matter for the sound judicial discretion of the orphans' court, whose action when thus presented is generally not subject to review by this court, especially when the application does not set forth the proposed amendment, so that its materiality may be seen. *Mead v. Tydings,* 133 Md. 608, 611; *Holloway v. Safe Deposit & Trust Co.,* 152 Md. 289. In our judgment, the whole controversy is presented on the appeal from the first order and so the ruling of the orphans' court in refusing to entertain the prayer of the second petition affords no ground for reversal. *McAvoy v. Renehan,* 116 Md. 337; *Barroll & Cannell v. Reading,* 5 H. & J. 176; *Little Sisters of the Poor v. Cushing,* 62 Md. 416, 421.

2. The material allegations of the caveat and original petition for issues are to the effect that the will is invalid, either because the testatrix did not have sufficient mental capacity to make a valid testamentary paper at the time of its execution, or because the purporting will was procured by the undue influence exercised and practiced upon her by her daughter or by others. The averments of the caveat are sufficient for the caveator to have had the two questions of mental capacity and undue influence presented in the form of issues for trial by jury, provided the caveator's receipt of his legacy and his release therefor to the executrix do not prevent. It is well settled that a person cannot accept and reject the same instrument, but must abide his choice of remedies or of rights arising thereout. So, if one is paid his legacy and gives an acquittance to the executor, he ordinarily cannot assail the validity of the will under which he became entitled. But this general rule is subject to the conditions that when the party acted he must have known of the existence of the circumstances which, giving rise to inconsistent rights, made necessary a choice between them, and that he had the intention to elect, either expressly or by acts which imply choice and acquiescence. Unless, therefore, the legatee here knew, or was put on inquiry, at the time of the payment of the legacy and of the execution of the release, of the lack of testamentary capacity of his mother when she executed her

will, and of the undue influence practiced upon her and constraining her will in its making, the basis of an election is gone. He could not be held to have chosen between two rights when he knew of the existence of but the one he accepted, nor to have had the intention to reject something of whose real or potential actuality he was ignorant. If the rights of third parties have not intervened, and he is not chargeable with laches after discovery of the facts which would create an intestacy and give him the status of an heir or next of kin and distributee, the legatee will be permitted to revoke his acceptance of the legacy, and his release will be rescinded or treated in law as a nullity to enable him to prosecute his claim as distributee and heir. *Ewart on Waiver Distributed,* pp. 69-122; *Pomeroy's Eq. Jur.* (3rd Ed.), sec. 512; *Reichard v. Izer,* 95 Md. 451, 461-465; *Housman v. Measley,* 139 Md. 598; *Safe Deposit & Trust Co. v. Devilbiss,* 128 Md. 182, 187; *Meyers v. Kooke,* 146 Md. 471, 474, 475; *Fisher v. Boyce,* 81 Md. 46, 52, 53; *Bowers v. Cook,* 132 Md. 432, 440; *Bolton Mines Co. v. Stokes,* 82 Md. 50, 58-60; *Bower on Estoppel,* pp. 340, 341.

If the caveat of the appellant be tested by these rules, it will be found stated in plain and definite terms, easily understood by those to whom it was addressed, (1) that the legatee's acceptance of the legacy and his release were while he knew nothing whatsoever of the facts and circumstances which, under either of two issues, might make the will invalid; (2) that this knowledge subsequently came to him, and then only within a few months before beginning the proceedings to have the will declared void; and (3) that the caveat was filed to enforce his legal rights as distributee as in case of intestacy. The allegations with respect to testamentary incapacity and undue influence were those commonly used; and the caveatee's answer was a traverse of the facts upon which the caveat was grounded, and a denial in terms of the caveator's ignorance of any material fact at the time of payment of the money and the delivery of the release.

The proceedings in the orphans' court are intended to be more informal and simple than those at law or in equity,

and the pleadings here were sufficient to put the parties at issue on questions of fact involving, first, testamentary capacity; secondly, undue influence, and, thirdly, the caveator's knowledge of the facts and circumstances upon which the first two issues were predicated at the time of the payment of his legacy. By reason of his acceptance of this legacy, the caveator could not, because of the principles of law stated, proceed to assail the validity of the will, until he had first established that he did not have knowledge of the facts and circumstances affecting the integrity of the will at the time he accepted the legacy. The question of the caveator's knowledge became, therefore, the preliminary question of fact for determination, and it was this initial inquiry which the petition of the caveator sought to have submitted in the form of issues for trial before a common law court. As this preliminary issue was one of fact, and since the caveator as one of the parties to a plenary proceeding required it, the imperative duty of the orphans' court was to direct such issue or issues to be made up as would, when framed, present the questions of fact properly in controversy; and to send the same to any convenient law court for trial. Code, art. 93, sec. 264; *Price v. Taylor,* 21 Md. 356, 363; *Sumwalt v. Sumwalt,* 52 Md. 338, 346; *Keene v. Corse,* 80 Md. 20, 23; *Bradley v. Bradley,* 119 Md. 645, 654; *Bridge v. Dillard,* 104 Md. 411, 421; *Bowers v. Cook,* 132 Md. 432, 440; *Reichard v. Izer,* 95 Md. 451, 464, 465; *Langhirt v. Hicks,* 153 Md. 31; and cases cited *supra.*

Until the preliminary question of fact be determined in favor of the caveator, he cannot proceed with his caveat, and, even if the will should then be sustained, the caveator would take his legacy, as there is no condition in the will against his attempt to have it declared invalid. 2 *Jarman on Wills* (6th Ed.), *902. It is, consequently, only in the event that his contemplated attack upon the will be successful, that there would be any occasion for him to refund the legacy paid to him by the executor. Upon such a contingency, the law protects the executor in all lawful acts done before the revocation of his letters. Code, art. 93, sec. 37; *Smith v. Stock-*

*bridge, Admr.,* 39 Md. 640, 646; *Parker v. Leighton,* 131 Md. 418, 421; *Bagby's Executors and Administrators,* pp. 7, 70. Moreover, if an intestacy arise, the caveator, as a child of the decedent, would be a distributee of the personalty and an heir of any realty. The payment of the legacy would be regarded as having been made for the use of the executrix and chargeable as an advancement against the share of the caveator in the personalty. It would, therefore, be impossible for the *status quo* of the executrix prejudicially to be affected, except through the share of the caveator as next of kin being less than the legacy. It does not appear that this contingency would even probably result, if the will were held invalid. In view of the certainty that the alternative status of the caveator is either that of legatee or next of kin, the formal offer of the caveator to refund the legacy to the executor, coupled with his undenied allegation of a present ability and readiness to pay, is sufficient, under all the circumstances, to entitle him to proceed. 5 *Pomeroy's Eq. Jur.* (4th Ed.), sec. 2110, n. 82; 3 *Williston on Contracts,* secs. 1529, 1530, 1594; *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 643; *Hall v. Hall,* 147 Md. 184, 193.

For the reasons stated, the order of May 19th, 1927, dismissing appellant's caveat and petition for the framing of issues on the preliminary question of knowledge, will be reversed, and the order of May 31st will be affirmed, and the cause remanded.

> *Order of May 31st, 1927, affirmed, with one-fifth of the costs to be paid by the appellant, and order of May 19th, 1927, reversed, and cause remanded to the Orphans' Court of Baltimore City for further proceedings in conformity with this opinion, and four-fifth of costs to be awarded as the Orphans' Court shall determine.*