**B. Brenda JOYCE, Appellant,**

v.

**Shirley WALKER and Joseph Webb, Appellees.**

**No. 89–328.**

District of Columbia Court of Appeals.

Argued Feb. 15, 1991.

Decided June 21, 1991.

B. Brenda Joyce, pro se.

---

Joseph Webb, pro se.

Before TERRY and FARRELL, Associate Judges, and BELSON, Associate Judge, Retired.*

FARRELL, Associate Judge:

Housing provider Brenda Joyce appeals the trial court's denial of her motion to set aside the dismissal of her suit for possession, to reinstate the protective order in the case, and to order the tenants to redeposit $6,775.00 into the court registry that had been released to the tenants. Because the trial judge did not abuse his discretion in denying the motion, we affirm.

## I.

In October 1986, Joyce brought suit in the Landlord and Tenant branch of Superior Court against two tenants, Shirley Walker and Joseph Webb, for nonpayment of rent. The court stayed the suits pending resolution of the tenants' petitions filed with the District of Columbia Department of Consumer and Regulatory Affairs, Rental Accommodations and Conversion Division (RACD). Following the June 13, 1988, RACD decision, which was favorable to Walker and Webb, the tenants moved the trial court to set aside the stay, reconvene the proceedings, release all funds in the registry, and dismiss Joyce's complaints for possession. The tenants represented in their motion that they would serve Joyce at four different locations to ensure she received a copy of the motion. Joyce did not appear at the July 1, 1988, hearing on the motion.[1] The trial court released the funds in the registry to the tenants and dismissed the complaints for possession. Joyce did not appeal.

On December 19, 1988, pursuant to Super.Ct.Civ.R. 60(b)(3) (1990), Joyce moved to set aside the dismissal, reinstate the

protective order and order the tenants to redeposit the monies that were released from the registry. Joyce alleged that she had never received a copy of the tenants' motion to vacate the stay. On January 10, 1989, following a hearing, the trial court denied Joyce's motion.[2]

## II.

■ On appeal, Joyce challenges the trial court's dismissal of the complaints for possession, disbursal of the registry funds, and refusal to reinstate the suits for possession. We do not directly consider Joyce's challenges to the dismissal or disbursal of the registry funds. Joyce did not appeal from the trial court's July 1, 1988 order, and her motion to set aside the dismissal pursuant to Super.Ct.Civ.R. 60(b)(3) may not be used as a substitute for appeal. *Joseph v. Parekh*, 351 A.2d 204, 205 (D.C. 1976). The only issue before us is whether the trial court abused its discretion in denying the Rule 60(b) motion. *Id.; see State Farm Mutual Automobile Ins. Co. v. Brown*, 593 A.2d 184, 185 (D.C.1991).

■ It is true that, "because courts universally favor trial on the merits, even a slight abuse of discretion in refusing to set aside a judgment may justify reversal." *Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1159 (D.C.1985). Factors to be considered are

whether the movant (1) had actual notice of the proceedings; (2) acted in good faith; (3) took prompt action; and (4) presented an adequate defense. Prejudice to the non-moving party is also relevant.

*Id.* at 1159–60. We may concede that Joyce "presented an adequate defense," which in this context means that she had a sound legal position in arguing that the court should not have vacated the stay pending any appeal of the RACD decision

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on June 1, 1991.

1. When the court asked Webb if Joyce had previously had a lawyer, Webb replied affirmatively but added that Joyce's counsel had filed a

motion to withdraw in January 1988, which the court had granted, "so that Ms. Joyce could represent herself *pro se.*"

2. Joyce then moved for reconsideration, which the court denied on January 27, 1989, by memorandum and order.

to the agency and this court.[3] Nevertheless, we conclude that the trial court did not abuse its discretion in denying the motion to set aside the judgment.

Both in her written motion and in argument on the motion, Joyce claimed under Rule 60(b)(3) that the release of the money in the registry and the dismissal of her claims had been "fraudulently obtained" by Walker and Webb,[4] in that they had attempted service of their motion by means they knew or should have known would be ineffective. At the hearing the tenants detailed their efforts to serve Joyce with the motion at four different locations, including her home address. In addition, Webb read a portion of the June 13, 1988 RACD decision in which the hearing examiner had alluded to Joyce's allegations that she had not received numerous notices, letters and other documents "not only from the [tenants], but also from Housing Inspectors and employees of RACD." The examiner's report, which the trial court had read, pointed out that "more than one housing inspector testified that they personally served [Joyce] with notices of housing code violations, however, she repeatedly denied that she was served many of the notices." In light of "[t]he sheer number of items" Joyce claimed not to have received, the examiner had "discount[ed her] 'lack of receipt' claims."

At the court hearing Joyce acknowledged that, while the mailbox at her home address had been "bombed" years earlier, any mail sent there was automatically forwarded to her post office box number; yet when the court asked her why she had been unable to pick up mail being held for her at the post office, she offered no responsive explanation. The trial court therefore rejected the claim that Webb and Walker had procured the dismissal by

fraud or misconduct, finding that they had "made a diligent and conscientious effort to serve a copy of their motion" on Joyce. Although the court did not find that Joyce had actually received notice of the proceeding, the inference is unmistakable that it concluded she alone—and not Walker or Webb—was responsible for her failure to respond to the tenants' motion.

The court further found that Joyce had "made no effort to contest the motions filed by [Walker and Webb] prior to December 29, 1988," six months after her claims were dismissed and the monies in the registry returned to the tenants. As pointed out above, the timeliness of action taken by the party seeking to set aside a judgment, as well as prejudice to the non-moving party, are factors to be considered by the trial court. In her motion to set aside the dismissal, Joyce asserted only that she had not become aware of the July 1 action of the trial court lifting the stay and dismissing her claims until December 15, 1988, when she was in court on another matter. Joyce did not dispute that the court, following normal practice, would have served her with the dismissal order at the address listed on her complaint, nor did she explain her failure to notify the court of any change of address. We reject the suggestion that, given the stay of court proceedings which had been ordered, Joyce had no reason to expect any communications from the court and hence no duty to keep the court informed of her mailing address for purposes of service. The upshot was that she sought reinstatement of her claims and repayment of nearly $7,000 by the tenants into the registry fully six months after the money had been released and her claims dismissed. The prejudice to the tenants in these circumstances is plain,[5]

---

3. *See Drayton v. Poretsky Management, Inc.*, 462 A.2d 1115, 1120 & n. 9 (D.C.1983). The RACD decision, entered on June 13, 1988, ordered *inter alia* that tenant Webb receive a rent refund of $18,582.09 and tenant Walker a refund of $5,191.39 from appellant.

4. Rule 60(b)(3) provides that, "[o]n motion and upon such terms as are just, the Court may relieve a party ... from a final judgment ... for ... fraud (whether heretofore denominated in-

trinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

5. The dissenting opinion states that it is Joyce who is prejudiced because, as a result of the vacating of the stay, the tenants "succeeded, in effect, in gaining for themselves two years of rent-free occupancy of the housing accommodation...." This assertion seems doubtful in light of the RACD decision, note 3, *supra*, awarding

and the untimeliness of the requested re-lief—based upon the latest of a string of asserted failures to receive notice—confirms the trial court's conclusion that any hardship Joyce suffered was entirely of her own making.

For these reasons as well, we decline the suggestion that the trial court abused its discretion in not treating Joyce's motion, filed by a *pro se* litigant, as one for relief under Rule 60(b)(1) ("[m]istake, inadvertence, surprise") or Rule 60(b)(6) ("any other reason justifying relief from the operation of the judgment"). The record does not support a finding—which the trial court was never asked to make—that Joyce's failure to learn of the tenants' motion was the result of mistake or inadvertence. It is unnecessary to question her good faith to discern in this record a pattern of actual or asserted failures to receive service amounting to gross negligence. *See Starling*, 495 A.2d at 1161 ("due diligence is required to obtain relief under Rule 60(b)(1)"). As for Rule 60(b)(6), in *Starling* the court stated that this rule "is properly invoked in extraordinary circumstances or where a judgment may work an extreme and undue hardship." *Id.; see Clark v. Moler*, 418 A.2d 1039, 1043 (D.C.1980) (circumstances "may be so egregious as to [warrant] relief under Super.Ct.Civ.R. 60(b)(6)"). Those circumstances are not present in this case.

The order denying the motion to set aside the dismissal, to reinstate the protective order, and to compel repayment to the registry is, therefore,

*Affirmed.*

BELSON, Associate Judge, Retired, dissenting:

I cannot agree with my colleagues' decision to affirm. Appellant Brenda Joyce may or may not have a meritorious case on

the merits, but the procedural history of this case does not justify a ruling that she has forfeited the right to have the merits adjudicated. To use the language that our precedents have developed, the trial court committed at least a "slight abuse of its discretion," *Starling v. Jephunneh Lawrence & Assoc.*, 495 A.2d 1157, 1159 (D.C. 1985), when it declined to relieve her of her procedural default.

Although I deal with the same set of facts that the majority describes, I see them quite differently. During the course of a hard-fought landlord and tenant case, the Superior Court imposed a *Drayton* stay while the Rental Accommodations and Conversion Division (RACD) of the District of Columbia Department of Consumer and Regulatory Affairs considered certain petitions of appellee tenants.[1] *Drayton v. Poretsky Management, Inc.*, 462 A.2d 1115 (D.C.1983). While the reason for the *Drayton* stay remained fully in force, tenants asked the trial court to enter an order setting aside the stay, to release the funds in the court registry to the tenants, and to dismiss the action for possession. Although the tenants filed their motion shortly after the RACD had entered a hearing level decision, they knew or should have known that the *Drayton* stay remained in effect, as this court had held in *Drayton* that such stays remain in effect not only during any internal administrative appeals, but also during any subsequent appeal to this court. *Drayton, supra,* 462 A.2d at 1120 & n. 9. Making it unmistakably clear that the matter was still pending before the administrative agency and that the stay therefore should remain in place was the fact that the tenants themselves had petitioned for reconsideration at the hearing level and their petition was still pending before the RACD.[2]

the tenants rent refunds totalling more than $23,000.00.

1. The tenants alleged that the rental property was not properly registered with RACD, that landlord Joyce had retaliated against them for exercising their rights, and that Joyce had substantially reduced services and facilities which were a part of the mandatory rent.

2. In the memorandum of points and authorities that accompanied their motion, the *pro se* tenants informed the trial court that they had requested the RACD to reconsider its decision and to grant them greater relief. They maintained, however, that because they simply sought to increase the award, the findings of fact and conclusions of law would remain the same after June 30, 1988, unless Joyce filed an appeal.

Nevertheless, tenants filed their above-described motion with the trial court and somehow caused it to be brought on for hearing sooner than permitted by Superior Court Landlord and Tenant Rule 13.[3] When the matter came before the Landlord and Tenant judge on July 1, 1988, he granted the tenants' unopposed motion to vacate the stay, to release the registry funds to the tenants, and to dismiss the complaint of appellant Joyce, the landlord. Notwithstanding the onus imposed by a heavy landlord and tenant calendar, it appears fair to observe that under the circumstances the judge (not the judge whose order is on appeal) would have been well advised to scan the underlying papers which clearly showed that the RACD proceeding was still going on and that, necessarily, any internal administrative appellate or judicial appellate proceedings were still in the future or to ask the tenants elementary questions about the status of the proceeding before the RACD. The most cursory inquiry or review of the file would have informed the judge that he was required to leave the *Drayton* stay in effect. Instead, the tenants' groundless motion was perfunctorily granted. The court ordered the sum of $6,775, two years' accumulation of unpaid rent, to be released from the registry of the court to the tenants, and appellant Joyce's action was dismissed. Even the fact that the amount in question was so obviously substantial to a private individual landlord triggered no inquiry into the circumstances.

According to appellant Joyce, she came into court promptly to seek relief when she learned, some five months later, that the tenants had received all of the rent deposited in the registry and had secured the dismissal of her action. A hearing held before a different judge focused upon whether the tenants had made diligent efforts to serve appellant Joyce with their original motion and whether appellant Joyce had made any effort to contest the matter before seeking relief some five months later. This, as I will develop, was not the proper focus for the second judge's inquiry. The second judge denied the motion for relief, and subsequently denied as well a motion for reconsideration of his original ruling.

Our precedents have set forth clearly the frame of reference within which motions like appellant Joyce's must be evaluated.

> Each case must be evaluated in light of its own particular facts taking into consideration whether the movant (1) had actual notice of the proceedings; (2) acted in good faith; (3) took prompt action; and (4) presented an adequate defense. Prejudice to the non-moving party is also relevant.

*Starling, supra,* 495 A.2d at 1159–60; *accord, Jones v. Health Resources Corp. of America,* 509 A.2d 1140, 1145 (D.C.1986); *Pfeister–Barter, Inc. v. Laois,* 499 A.2d 915, 917 (D.C.1985); *Alexander v. Polinger Co.,* 496 A.2d 267, 269 (D.C.1985); *Mewborn v. U.S. Life Credit Corp.,* 473 A.2d 389, 391 (D.C.1984); *Clark v. Moler,* 418 A.2d 1039, 1043 (D.C.1980); *Dunn v. Profitt,* 408 A.2d 991, 993 (D.C.1979).

Applying those criteria here, I observe first that appellant Joyce's vehement assertion of her rights suggests strongly that she did not have actual notice of the July 1 proceeding. It is fair to say that this case had been contested not only with vigor but also with feeling by the parties. It is unlikely that if appellant Joyce had had any inkling that the tenants were trying to secure the unauthorized lifting of the *Drayton* stay, the removal of the equivalent of two years' rent out of the court's registry, and the dismissal of her complaint for possession, she would not have presented herself before the court with all of the energy that she displayed in her later motion for relief and her appearance before

---

**3.** A docket entry reads "Notice of Hearing set for 7/1/88 at 9:00 a.m. filed by consent." It is clear that appellant Joyce did not consent to the hearing of the motion before the expiration of the normal time required by the rule. Although this raises a question about the propriety of the manner in which the tenants secured the calendaring of the motion, the timing was not consequential as appellant Joyce claims not to have received a copy of the motion and presumably would have failed to appear at any hearing held a few days later in compliance with the scheduling rules.

this court. In making this observation, I acknowledge readily that we must defer to the motions judge's finding that the tenants made diligent efforts to serve appellant Joyce with the motion to lift the stay and for other relief, but point out 1) that that should not have been the sole focus of the court when considering appellant Joyce's request for relief and 2) that even assuming diligent efforts at service, there was strong circumstantial evidence that appellant Joyce did not receive this motion.

As to whether appellant Joyce acted in good faith, it is sufficient to note that she was an appellant attempting to collect the stated rent for premises rented to the tenants. Her action was, on its face, a proceeding brought in good faith.

With regard to the taking of prompt action, appellant Joyce represents that she came into court promptly upon learning in December of the dismissal of her landlord and tenant actions. The same reasons which suggest that she did not have actual notice of the proceedings suggest as well that she tried promptly to overturn the tenants' groundless but successful effort to secure withdrawal of the monies from the court registry and dismissal of her suit.

With respect to setting forth an adequate defense which, as the majority concedes, means in this context that the landlord would have had a sound legal position to argue if she had been before the court on July 1 when it erroneously vacated the *Drayton* stay, it is obvious that appellant Joyce earns a high score on this criterion. The first Landlord and Tenant judge plainly erred in granting tenants the relief they requested while the RACD was reconsidering its earlier decision.

We noted in *Starling, supra,* that prejudice to the non-moving party is also relevant. 495 A.2d at 1159–60. I submit that appellant Joyce also fares well on this score. The non-moving parties here succeeded, in effect, in gaining for themselves two years of rent-free occupancy of the housing accommodation in question by prematurely bringing before the court a groundless request for the vacation of a *Drayton* stay. If the tenants would find themselves burdened by a requirement that they pay back immediately the monies they were mistakenly allowed to recover from the registry, the trial court could fashion a less onerous schedule of repayment over time.

I think the foregoing makes it entirely clear that a weighing of the factors we set forth in *Starling, supra,* demonstrates that there was at least slight abuse of discretion on the part of the court when it declined to set aside the default entered against appellant Joyce. Her position as to the good faith of her initial underlying landlord and tenant action and the adequacy of her defense to the ill-conceived motion she failed to oppose is extremely strong. Her position with respect to lack of actual notice and taking prompt action is more than plausible. Any prejudice to the non-moving parties originated with their premature and meritless motion to set aside the *Drayton* stay and could be mitigated by the trial court's handling of the matter of repayment of money into the registry.

Finally, I think the majority holds the *pro se* appellant to an unduly stringent standard with respect to her choice of the particular sub-paragraph of Superior Court Civil Rule 60(b) that she chose to move under. It is hardly surprising that a party unschooled in the law suspected that there had been fraud or misrepresentation or "other misconduct of an adverse party," Super.Ct.Civ.R. 60(b)(3), where her adversaries in a case marked by bad feelings have somehow misled the trial court into entering an erroneous vacation of the *Drayton* stay. When a *pro se* party tells the court that she did not receive notice of a hearing and did not know of the entry of an order against her, it is apparent that she is asserting mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1). While, as the majority suggests, appellant Joyce obviously had a duty to keep the court informed of a current mailing address, Super.Ct.Civ.R. 10–I, she need not argue that she had "no duty to keep the court informed," as the majority puts it, but rather that her failure to do so was

excusable, especially as it obviously occurred during the course of an ongoing stay of the Superior Court proceedings, a stay which was lifted only because of her adversaries' groundless motion.

Ultimately, my disagreement with the majority opinion is that it fails, I submit, to apply realistically the concept of "slight abuse of discretion" that this court has developed over the years. If that is the standard we are to decide by, then the trial court should be required to exercise its discretion to relieve a party in appellant Joyce's circumstances from the consequences of her procedural default.