**Deborah A. REDMAN, Appellant,**

v.

**Jennifer KELTY, Appellee.**

**No. 99–CV–1339.**

District of Columbia Court of Appeals.

Argued March 26, 2002.
Decided April 11, 2002.

Deborah A. Redman filed a brief pro se.

No appearance for appellee.

Arthur B. Spitzer for the American Civil Liberties Union of the National Capital Area, amicus curiae.

Before SCHWELB, FARRELL, and REID, Associate Judges.

SCHWELB, Associate Judge:

Deborah A. Redman appeals by leave of this court from an order of the trial judge, sitting in the Small Claims Branch of the Civil Division, dismissing her action against Jennifer Kelty with prejudice for

failure to prosecute. We reverse the judgment and remand with directions to reinstate both Ms. Redman's complaint and Ms. Kelty's counterclaim.

## I.

Ms. Redman filed this action on May 3, 1997, almost five years ago. She initially sued Ms. Kelty for $124.45, alleging that two Himalayan kittens sold to her by Ms. Kelty were not of the type or in the condition asserted by Ms. Kelty. Ms. Redman subsequently amended her complaint to pray for damages of $196.25, and ultimately sought an award of $5,000. Ms. Kelty counterclaimed for "malicious prosecution,"[1] claiming that "Deborah Redman has been harassing me for 6 months and has no[w] filed a bogus claim against me."

For reasons not entirely apparent from the record, the case dragged on for an extensive period of time. Ms. Redman claims to have appeared in court on five different dates in 1997, eleven dates in 1998, and once in 1999; Ms. Kelty has presented nothing to contradict this claim.[2] During this period, a default judgment was entered in Ms. Redman's favor, but it was subsequently set aside. Ms. Kelty frequently failed to appear, and on one occasion, on February 24, 1998, she was brought to court on a bench warrant. There were a number of heated hearings before several hearing commissioners, and three commissioners recused themselves from the case. Ms. Redman also demanded that the trial judge recuse himself; we perceive no merit at all in that demand and do not address it further.[3]

1. The counterclaim would more accurately be characterized as alleging abuse of civil process.

2. In an appendix to her brief on appeal, Ms. Redman asserts that there were twenty-four hearings, of which she missed two because, according to her, her alleged disability was not accommodated by the court. Ms. Redman further claims that Ms. Kelty attended only seven hearings. The jacket entries do not appear to be complete, but they suggest that Ms. Redman's numbers are within the ballpark.

3. *See generally Browner v. District of Columbia,* 549 A.2d 1107, 1113–14 & n. 16 (D.C.

Throughout the various proceedings in the case, Ms. Redman asserted that she was seriously disabled, that her condition was "life threatening," and that she was therefore unable to remain in the courthouse for more than half a day at a time. In the trial court, however, Ms. Redman presented no independent medical verification of her disability.[4]

The case was finally scheduled for trial on January 13, 1999, and both parties were present in the courtroom that morning. The judge could not reach the case until 2:30 that afternoon, however, and by that time Ms. Redman had left the courthouse. Ms. Redman left a note in the jacket stating that she

> was present this morning to have her case heard. Because she is disabled with a serious chronic debilitating illness, she can only be present in court in the mornings or afternoons, but not all day. This has been on record since the first day of court under Commissioner King. I request a continuance.

The trial judge asked Ms. Kelty for her position on Ms. Redman's request, and Ms. Kelty responded as follows:

> My position on that is Ms. Redman has continued this case for two years. She appears in court. When it actually comes time for it to come to trial, she has an illness and leaves.

1988) (to warrant recusal, the alleged bias must stem from an extrajudicial source).

**4.** In her application for allowance of appeal, Ms. Redman attached a letter from Alan G. Pocinki, M.D., in which Dr. Pocinki stated, *inter alia,* that Ms. Redman suffers from "a syndrome consisting of several different illnesses," that her "energy level, and hence her mobility are markedly reduced," that she must travel by electric scooter, and that "she cannot stand or even sit for extended periods—*i.e.* more than an hour—without becoming ill." This letter, however, is dated Febru-

Following further discussion, the trial judge denied the request for a continuance and dismissed both the complaint and the counterclaim. The judge explained:

> But, as far as I'm concerned, this case is dismissed, now. It's been up many times. You've been inconvenienced. She's not here. There's no medical evidence of any serious chronic debilitating illness. And, nobody can simply write a note that they want a continuance and expect it to be granted in any proceeding in this court.
>
> So, the case is dismissed.

The judge directed that

> any further proceedings will be returned to Judge Alprin. And, I will see to it that this case does not come up again. Assuming that what I know now is, in fact, correct. Okay?

On January 20, 1999, Ms. Redman filed a motion for reconsideration. The motion included the following:

> The Plaintiff has always appeared in Court at designated hearing dates. She never called in ill or requested a change of date despite the fact that her appearance in court has often been life-threatening. Except for the initial hearing and several hearings that took place *after the Plaintiff successfully had the amount of her claim raised to $5,000 plus court costs,* the Defendant, however, refused to appear in Court. In fact,

ary 7, 1999, more than three weeks *after* Ms. Redman's case was dismissed, and no medical verification of her disability was presented in the trial court. Ms. Redman claims to have been told by Commissioner John King that she would not need medical verification. The record reflects that in discussing her condition, Ms. Redman stated that "you can certainly talk to my doctor about it." The Commissioner responded that "[n]o one is questioning ... your credibility or the truth of the matter but we're not just geared to stop everything...."

the Defendant eluded service and was brought in on a bench warrant issued by Commissioner Macalus[o] in spring 1998. In spite of the Defendant's exceedingly bad showing, the Court has been very willing to vacate judgments for the Plaintiff.

On 13 January 1999 both the Plaintiff and Defendant were present at D.C. Superior Court for hearing. The Plaintiff had previously told Assistant Chief of Small Claims Court Mr. Arthur Broaddus that she would request that a judge hear the case, and he had warned her that one might not be available. He knows that the Plaintiff is seriously disabled and therefore can only stay half a day. He also knows the Defendant is now coming in from Norfolk, Virginia. Because a hearing was scheduled in the afternoon, the Plaintiff was forced to leave.

(Emphasis in original.)

On February 18, 1999, the trial judge entered a written order denying Ms. Redman's motion. The judge stated, in pertinent part, that "[p]laintiff has failed to assert any grounds that would legitimate reversal of the court's decision to dismiss both the complaint and the counter-claim filed in this case."[5] Ms. Redman requested leave to appeal, and on October 21, 1999, a motions division of this court entered an order granting Ms. Redman's motion.

## II.

■ "Of all the weapons in the judicial arsenal available to a trial court to discourage dilatory behavior during litigation, perhaps none is so lethal as a dismissal with prejudice." *Solomon v. Fairfax*

*Vill. Condo. IV Unit Owner's Ass'n,* 621 A.2d 378, 379 (D.C.1993) (per curiam). Although the determination whether to dismiss a complaint for lack of prosecution pursuant to Super. Ct. Civ. R. 41(b) is committed to the trial court's sound discretion,

> [i]t is axiomatic that the trial court must exercise its discretion prudently and must design any sanction to fit the violation in question. *See* 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1524, at 266 (Supp.1985). The trial court must be especially cautious where it chooses to impose the very severe sanction of dismissal. Dismissal should be imposed "sparingly." *Frazier v. Center Motors, Inc.,* 418 A.2d 1018, 1020 (D.C.1980); *Beckwith v. Beckwith,* [379 A.2d 955, 959 (D.C.1977), *cert. denied,* 436 U.S. 907, 98 S.Ct. 2239, 56 L.Ed.2d 405 (1978)]. Such caution is a reflection primarily of our well-established preference for deciding cases on their merits. *See, e.g., Garces v. Bradley,* 299 A.2d 142, 144 (D.C.1973).

*Durham v. District of Columbia,* 494 A.2d 1346, 1350 (D.C.1985). Lesser sanctions must be considered before dismissal of the complaint is justified. *Id.* We have also stated that dismissal with prejudice is an appropriate sanction only upon "clear evidence of deliberate delay," and that courts have discerned "an abuse of discretion in a trial court's dismissal with prejudice where the only evidence of intentional delay is one instance of failure to appear." *LaPrade v. Lehman,* 490 A.2d 1151, 1155 (D.C.1985).

■ In light of the foregoing authorities, we cannot sustain the dismissal of Ms.

---

**5.** The judge wrote in a footnote:

Defendant informed the court that she had driven four hours from Norfolk, Virginia to be present for the hearing. Furthermore, she submitted that on more than one occasion she has driven from Norfolk to Washington for a hearing in this case scheduled at plaintiff's request, only to have the case continued because plaintiff fails to appear when the case is called.

Redman's complaint with prejudice. The history of the case, much of it discernable from the case jacket, reflects that Ms. Redman attempted to litigate it aggressively for a period of twenty months. Although she would have been in a stronger position if she had provided medical evidence of her disability, *e.g.,* Dr. Pocinki's subsequent letter to the trial court, she might reasonably have inferred from Commissioner King's comment, see note 4, *supra,* that it would be unnecessary for her to present such documentation because the court would take her at her word on the subject of her illness.

It is true that on the day of the scheduled trial, Ms. Kelty informed the trial judge that on more than one occasion, she had been compelled to drive to court from Norfolk, Virginia for scheduled trial dates, only to have to return without the case being reached. This occurred because, according to Ms. Kelty, the plaintiff failed to appear. But even given these representations by Ms. Kelty, still the allegations in Ms. Redman's motion for reconsideration, which were confirmed in substantial part by entries in the case jacket showing the plaintiff's attendance at numerous hearings, rendered dismissal with prejudice and without further inquiry too drastic a remedy in light of the case law cited above. Moreover, Ms. Redman claimed to be suffering from a serious disability, and the policies reflected in the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* and of the District of Columbia Human Rights Act, D.C.Code §§ 2–1401.01 *et seq.* (2001), required the judge to consider carefully whether the plaintiff was being denied equal access to the court on account of her disability.

For the foregoing reasons, the judgment is reversed and the case is remanded to the trial court with directions to reinstate the complaint and the counterclaim and for further proceedings consistent with this opinion.

*So ordered.*[6]

---

6. We conclude that the extensive additional relief sought by Ms. Redman, including orders directed to the Superior Court to alter that court's practice, is inappropriate in a Small Claims suit between private litigants.