In re ESTATE OF Barbara DAVIS,
Gary Davis, Appellant.

No. 05–PR–1475.

District of Columbia Court of Appeals.

Argued Dec. 19, 2006.

Decided Jan. 25, 2007.

Morris E. Fischer, Bethesda, MD, for appellant.

Matthew F. Shannon, Washington, DC, for the personal representative, Robin Davis–Watson.

Before FARRELL, RUIZ, and REID, Associate Judges.

FARRELL, Associate Judge:

Appellant (Davis) brought suit *pro se* contesting his mother's will which had left him $10,000 when, according to the complaint, she had intended the proceeds of the sale of the family home upon her death to be distributed equally among Davis and his three siblings. He claimed that the will was the product of undue influence by his sister (Davis–Watson), who had been named personal representative by the will, had signed it in the mother's name at her purported direction, and received the principal share of the estate under its terms. The trial judge dismissed the suit under Super. Ct. Civ. R. 41(b) when Davis failed to attend the pretrial scheduling and settlement conference, *see* Rule 16(b); and when the judge subsequently refused to reinstate the complaint on Davis's motion under Rule 60(b), Davis brought this appeal. Added complexity arises, however, from the fact that during the appeal Davis accepted (by cashing the check) the $10,000 distribution made to him by Davis–Watson after the judge's refusal to reinstate, leading Davis–Watson to assert that by acting in conformity with the will (*i.e.*, having "elected his remedy"), Davis may no longer pursue recovery from the estate outside of the will.

We hold that Davis has not forfeited his right to contest the will, where every indication is that the sum he accepted is much less than he would receive if his suit were successful; where Davis–Watson has identified no prejudice in the form of reliance to herself or others stemming from Davis's acceptance of the bequest; and where the suit on its face bears no evidence of insubstantiality such that it would burden the estate with unfair litigation costs. We hold further that the trial court abused its discretion in not reinstating the complaint, given this court's decisions that a single failure to appear at a pretrial conference

does not justify the strict sanction of dismissal unless the other party has suffered commensurate prejudice or unless the plaintiff's overall conduct has been dilatory in a manner constituting at least gross indifference, neither of which has been shown here.

## I.

Davis is the oldest of four children of Barbara Davis, who died of brain cancer on December 17, 2003. Her will, dated November 21, 2003, left $10,000 each to her three sons and "the remaining funds from the sale of [her] real property"[1] as well as "the residue ... of [her] estate" to her daughter, Davis–Watson, whom the will also named personal representative and who had signed the will in the mother's name, purportedly at her request. After the will was admitted to probate, Davis, acting *pro se*, sued his siblings on October 28, 2004, alleging that the will was the product of undue influence by Davis–Watson and that the mother had lacked testamentary capacity because at the time she executed the will she was experiencing seizures and paralysis and was not coherent, lucid, or fully conscious. Davis claimed that he had not learned of the will's existence until April 2004, and that either the mother had executed an earlier will ("which must exist somewhere") or, "if no [prior w]ill existed ... then she did not intend to leave a[w]ill, [but] her instruction to [his] knowledge was very clear, *i.e.*, the home was to be sold and the money was to be divided equally amongst her four children."

On November 15, 2004, Davis filed a written change of address with the court, listing his residence as 1106 5th Street, N.E., Washington, D.C., see note 1, *supra*, but requesting that all mail related to his will contest be sent to "P.O. Box 16086, Arlington, VA, 22215–1086." On December 20, 2004, he filed an amended complaint identical in substance to the earlier one, listing the Arlington post office box as his mailing address. On January 18, 2005, Davis–Watson answered the complaint, but on March 16, 2005, a default was entered against the other defendants (appellant's two brothers) for failure to answer.[2] That notice of default was mailed to Davis's Arlington post office address but also, mistakenly, to an address at "106 [instead of 1106] 5th Street, N.E." The same day, the court ordered the parties in writing to attend a scheduling and settlement conference on April 22, 2005; although the order does not state the addresses to which it was sent, a reasonable inference is that it too was sent to both of Davis's listed addresses, although misnumbered as to one.

When Davis did not appear at the April 22 scheduling conference, the trial judge dismissed the suit with prejudice for failure to prosecute. *See* Rules 16–II and 41(b). The record does not reflect that notice of the dismissal order was mailed to either party. Davis later retained a lawyer and, on September 13, 2005, moved to reinstate the suit under Rule 60(b), asserting that he had not learned until late August that "something may have gone awry in connection with [his] complaint when he discovered that the mother's house was being offered for sale through a broker." He then "promptly visited the probate division" and learned for the first time (he claimed) of the scheduling conference and the dismissal for his failure to attend it.

---

1. The parties agree that the family home, situated at 1106 5th Street, N.E., was the primary asset of the estate.

2. They sought no relief from that decision and are not parties to this appeal.

Following a hearing on November 2,[3] the trial judge denied the motion to reinstate. Important to his ruling was Davis's admission at the hearing that, despite the change of mailing address he had submitted to the court, "he was still receiving mail at the 5th Street[, N.E.] address," making it especially likely, in the judge's view, that he had received notice of the pretrial conference. The judge also found inexcusable Davis's failure to inquire about the status of his lawsuit during the ten months between the filing of the amended complaint and the "event[, the pending sale of the house,] that led him to go see what's going on with his [suit]."

Five days after the motion to reinstate was denied, Davis–Watson distributed $10,000 to each of the brothers under the will, the house just recently having been sold.[4] On December 2, 2005, Davis noted the present appeal and, on March 27, 2006, filed his opening brief. Davis–Watson subsequently moved to dismiss the appeal, however, pointing out that on April 24, 2006, Davis had cashed the check received from the estate. She argued that by doing so he was estopped from further challenging the will, citing, inter alia, Utermehle v. Norment, 22 App.D.C. 31 (1903), aff'd, 197 U.S. 40, 25 S.Ct. 291, 49 L.Ed. 655 (1905). A motions division deferred the issue of estoppel to this merits division of the court.

## II.

We first consider Davis–Watson's contention that "a legatee who accepts benefits under a will is estopped to contest that will or attack its validity" (Supp. Br. for Appellee at 1). Davis–Watson relies substantially on the Supreme Court's statement in Utermehle, supra, on review from the District of Columbia Circuit, that "there is really no foundation to dispute the proposition that [a party taking the benefit of a provision in his favor under a will] thereby is precluded from, at the same time, attacking the validity of the very instrument under which he received the benefit." 197 U.S. at 57, 25 S.Ct. 291 (citing cases). For the reasons that follow, however, the bare statement of that principle in Utermehle, in a factual setting very different from the present one and when the law of the District of Columbia has not "stood still" since that decision, Elam v. Monarch Life Ins. Co., 598 A.2d 1167, 1170 (D.C.1991), does not persuade us that Davis has forfeited his right to challenge the will.

Both at the Circuit Court level and in the Supreme Court, Utermehle applied common law principles of equitable estoppel to a will challenge, in circumstances where a key element of that doctrine—detrimental reliance by other parties—was powerfully demonstrated. That is how Utermehle was later understood by the Circuit Court, we think convincingly, in In re Estate of Burrough, 154 U.S.App. D.C. 259, 475 F.2d 370 (1973). Speaking for the court there, Judge Leventhal agreed with the claimant/appellant "that under . . . traditional estoppel analysis, in order for a party to be estopped (here from objecting to the will's validity), there must be not only acquiescence in validity on his part, but also a change in position on the part of others, a condition which both existed in Utermehle and was relied on in the Utermehle opinion." 154 U.S.App. D.C. at 260,

3. The notice of this hearing sent to the parties from the trial judge's chambers also mistakenly listed Davis's address as "106 [not 1106] 5th Street, N.E."; Davis nevertheless appeared at the hearing with counsel.

4. The check to appellant was in the amount of $15,000, the balance apparently constituting repayment of a $5,000 loan.

475 F.2d at 371 (footnote omitted). Specifically, the beneficiary in *Utermehle* had taken property under his grandfather's will (apparently knowing it cut him off from a larger inheritance), then waited over ten years before bringing a contest action. By that time not only were two of the witnesses to the will dead and a third paralyzed, but other heirs had spent or distributed the personalty given under the will, so that—as the Supreme Court observed—"[i]t would be impossible to place [them] in the same position that they were in at the time of the [grandfather's] death." 197 U.S. at 53, 25 S.Ct. 291. Application of estoppel was thus "greatly strengthened" because, "*in addition* to the fact that [the beneficiary] took a benefit under the will, [he] acquiesced in its validity for many years, . . . the opposing party . . . ha[d] so changed his position on that account that he [could] not be restored to it, and . . . witnesses [had] in the meantime died." *Id.* at 58, 25 S.Ct. 291 (emphasis added).

In *Burrough*, the Circuit Court explained this reasoning as a straightforward application of the rule "that estoppel requires prejudice wrought by detrimental reliance," *Burrough*, 154 U.S.App.D.C. at 262, 475 F.2d at 373, consistent with a later District of Columbia decision, *Bowen v. Howenstein*, 39 App. D.C. 585 (1913), that applied estoppel principles to the action of a testatrix's sister who had consented to probate and accepted jewelry under a will. The *Bowen* court, Judge Leventhal explained, recognized that the only limitation the legislature had intended "by way of estoppel on the statutory right of caveat [5] . . . is that provided by the general law of estoppel; and [this] requires that the party relying on an act as an estoppel show prejudice therefrom." *Burrough*,

154 U.S.App.D.C. at 261–62, 475 F.2d at 372–73.

The *Burrough* decision is not binding on us, *see M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971), but we agree with its holding that District of Columbia law generally, and *Utermehle* in particular, embody no unqualified rule that one who accepts a benefit under a will forfeits the right to contest its validity. A strict election rule of that kind, as the court stated in *Burrough*, would perpetuate the notion "that once prohibited a litigating party from asserting inconsistent claims in the same pleading," one that "has been relegated to the dustbin of legal history." *Burrough*, 154 U.S.App.D.C. at 263, 475 F.2d at 374; *see also Giordano v. Interdonato*, 586 A.2d 714, 715 (D.C.1991) (noting the Supreme Court's observation years ago that " '[a]t best [the] doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended' " (citation omitted)). Moreover, citing *Burrough*, this court too has recognized that the statutory right of will caveat is subject to "the doctrine of equitable estoppel, . . . [a]n essential element of [which] is prejudice caused by detrimental reliance." *In re Estate of Himmelfarb*, 345 A.2d 477, 483 (D.C.1975). But where the "claim is that the deceased intended to provide amply for the [contestant] and that this was thwarted by the intervention of[,] say, undue influence," there is no "inherent inequity in a relative's seeking to break a will when she has taken under the will." *Burrough*, 154 U.S.App.D.C. at 262, 475 F.2d at 373.

■■■■ In keeping with other jurisdictions that have eschewed a strict rule of election in this setting, the *Burrough* court identified factors relevant to whether es-

---

5. *See* D.C.Code § 20–305 (2002) (providing that any person may contest the validity of a

will within six months after notice of appointment of a personal representative).

toppel may fairly be held to bar a will challenge. First, beyond the bedrock showing required of detrimental reliance, "[t]here is requisite prejudice and estoppel when a party makes a claim outside the will after taking property under a will to which he would not otherwise have been entitled." *Id.* (*citing Gibson v. Gibson,* 53 App. D.C. 380, 292 F. 657 (1923)).[6] By contrast, "there is no comparable problem of equity and election when the claimant . . . is entitled to the property taken under the will even if he succeeds in the claim outside and against the will." *Id.* Second, and related, is the absence of a strict requirement that the claimant return the benefit received in order to challenge the will. "The requirement of proffer [or return] is not unqualified but calls for application in the interest of justice," *id.*, including consideration of whether " 'the party chargeable with the tender would, in the event of his prevailing in the suit, receive at least as much as he now has in his possession.' " *Id.* at 262 n. 8, 475 F.2d at 373 n. 8 (citation omitted); *see also Schmidt v. Johnston,* 154 Md. 125, 140 A. 87, 90 (1928). Finally, relevant too may be "whether the legacy is being used to finance litigation of *minimum substance* that will put heavy costs on the estate and other beneficiaries." *Id.* at 262 n. 9, 475 F.2d at 373 n. 9 (emphasis added). All told, *Burrough* teaches that "the 'inconsistency' of a beneficiary [in taking under a will yet challenging the instrument] in and of itself" is not "an affront to Justice," but that the test remains, instead, "estoppel in

case of detrimental reliance or like injustice." *Id.* at 262, 263, 475 F.2d at 373, 374.

■ Applying these principles from *Burrough* and similar decisions elsewhere,[7] we do not think Davis forfeited his claim by accepting the $10,000 bequest. First, we were told by Davis–Watson's counsel at oral argument that the sale of the home netted proceeds to the estate of approximately $300,000 after creditors of the estate were paid and expenses deducted.[8] Thus, it is not disputed that Davis took substantially less under the will ($10,000) than he would have received from the equal distribution of the estate's assets he claims the mother intended. *See Burrough,* 154 U.S.App.D.C. at 262, 475 F.2d at 373. Equally important, Davis–Watson has not demonstrated any reliance by herself or the other beneficiaries (who defaulted as defendants in any event) on Davis's acceptance of the $10,000. True, the estate has been distributed and Davis–Watson, having received considerably more from it than the other heirs, could be required to return money if the attack on the will were successful. But that eventuality cannot be traced to Davis's acceptance of the bequest in April 2006 (or even months earlier), *after* the home had been sold and the proceeds distributed. Davis–Watson was aware of his challenge to the will at least since October 2004 and had no reason to believe he had abandoned the challenge (despite the court's dismissal of the suit procedurally) when she distributed the proceeds in November 2005.[9] Davis–

---

6. *See also, e.g., In re Will of Lamanski,* 149 N.C.App. 647, 561 S.E.2d 537, 540 (2002); *Ford v. Yost,* 299 Ky. 682, 186 S.W.2d 896 (1944).

7. *See generally* R. Koenders, *Estoppel to Contest Will or Attack Its Validity By Acceptance of Benefits Thereunder,* 78 A.L.R.4th 90, 91–138 (1990).

8. Because Davis's acceptance of the bequest took place during the pendency of the appeal, we perforce must rely on undisputed representations by the parties, including by Davis–Watson's attorney, as to the circumstances surrounding it.

9. Davis's conduct is thus in sharp contrast to the claimant's in *Utermehle, supra,* who accepted a legacy of real property under the

Watson cannot fairly claim that in distributing the proceeds to herself and others she relied on Davis's later acceptance of the bequest while he continued to pursue his challenge to the will.

For the same reason, her argument that "the real property was sold thereby conveying title to third parties, and paying creditors therefrom whose interest may be affected or prejudiced if estoppel is avoided" (Supp. Br. for Appellee at 3–4) is unconvincing. Davis–Watson did none of these things in reliance on Davis's acceptance of the bequest. Moreover, there is no indication in the complaint that he seeks to undo the sale of the house or the payment of creditors from the proceeds. The mother's intent allegedly thwarted by the will was for her personal representative "to sell the family home, make certain that all expenses [were] paid[,] and then divide the remainder amongst each of the siblings equally" (Complaint, para. 43). In what at bottom is an intramural dispute over division of the sale proceeds, allowing the suit to proceed does not realistically threaten any rights of creditors or the purchaser of the home—rights that, in any event, would be protected by applicable due process and statutory requirements of fair notice, such as *lis pendens.*

Davis–Watson makes much of the fact that Davis has made "no proffer of the return of the legacy . . . to either the [p]ersonal representative or the [c]ourt," instead stating only (in his affidavit opposing dismissal of the appeal) that "I will renounce acceptance of the . . . $10,000 . . . if the [c]ourt compels me to do so." Whether or not this was a prudent position for Davis to take, "[t]he requirement of proffer is not unqualified," at least when,

as here, the claimant "would receive as much as he now has" from a successful challenge to the will. *Burrough,* 154 U.S.App.D.C. at 262 & n. 8, 475 F.2d at 373 & n. 8 (citation and internal quotation marks omitted); *see id.* at 262, 475 F.2d at 373 (quoting *Schmidt,* 140 A. at 90) (It is "only in the event that his contemplated attack upon the will would be successful that there would be any occasion for him to refund the legacy."). We decline to make the gesture of returning the $10,000 a condition of Davis being allowed to pursue his claim.

Lastly, the complaint does not suggest that Davis's suit is one of "minimum substance" likely to impose undue "costs on the estate and other beneficiaries" if estoppel is not applied. *Id.* at 262 n. 9, 475 F.2d at 373 n. 9. It alleges, *inter alia,* that the mother had repeatedly expressed her intent for the children to share equally in the estate, that she was *in extremis* mentally and physically when her will was created (or altered), and that the signature on the will, though in her name, is in the handwriting of Davis–Watson, who potentially stood to gain—and appears to have gained—most from the will. The issue at this point is not whether Davis can succeed in his allegations of undue influence or incapacity; but the complaint on its face provides no additional reason for barring his suit as a consequence of accepting the bequest.

### III.

We turn, therefore, to Davis's contention that the trial judge abused his discretion in declining to reinstate the complaint, which the judge had dismissed after Davis failed to appear at the initial scheduling and

will, sold it and retained the proceeds "for his own purposes," and made "no movement . . . or sign of discontent" with the legacy until years later. *Utermehle,* 197 U.S. at 54, 25

S.Ct. 291. Davis had acted upon his "discontent" long before accepting a benefit under the will.

settlement conference. *See* Super. Ct. Civ. R. 16–II; Rule 41(b).

"We have consistently stated that dismissal with prejudice pursuant to Super. Ct. Civ. R. 41(b) should be sparingly exercised." *Wilds v. Graham,* 560 A.2d 546, 547 (D.C.1989).[1] The reason it is "a drastic remedy" is that it "is contrary to the emphasis placed by the court on the desirability of assuring the right to be heard on the merits." *Hackney v. Sheeskin,* 503 A.2d 1249, 1253 (D.C. 1986). Thus, although the decision on a motion to set aside a default judgment under Rule 60(b) lies within the broad discretion of the trial judge, *e.g., State Farm Mut. Auto. Ins. Co. v. Brown,* 593 A.2d 184, 185 (D.C.1991), we review the exercise of that discretion carefully, even critically—a point capsulated by our (somewhat elusive) formulation that "even a slight abuse of discretion in refusing to set aside a [default] judgment may justify reversal." *Starling v. Jephunneh Lawrence & Assocs.,* 495 A.2d 1157, 1159 (D.C.1985). *See also Joyce v. Walker,* 593 A.2d 199, 200 (D.C. 1991); *id.* at 205 (Belson, J., dissenting).

---

1. We have made the same point with respect to dismissal under Super. Ct. Civ. R. 16–II for failure to appear at a pretrial, settlement, or status conference. *Durham v. District of Columbia,* 494 A.2d 1346, 1350 (D.C. 1985).

*Watkins v. Carty's Automotive Elec. Ctr.,* 632 A.2d 109, 109–110 (D.C.1993).

■ A number of factors are to be considered by the judge in deciding whether to set aside a default judgment on the plaintiff's motion under Rule 60(b) where his absence from a proceeding caused the default. Logically, first among these is whether the plaintiff received notice of the proceedings, here the scheduling conference set for April 22, 2005. Davis denies that he received that notice, pointing out, for example, that the default judgment

entered against his brothers the same day the notice was sent—and presumably mailed to him with the notice—erroneously listed his residential address as "106 [instead of 1106] 5th Street, N.E." He argues that this undercuts the trial judge's reliance on his admission at the hearing that he still received mail at his District address despite having changed to the Virginia mailing address he gave the court. But on this record we would be hardpressed to hold that the judge clearly erred, *see* D.C.Code § 17–305(a), in finding that Davis had received the notice of the hearing. (We note, for example, that the default notice regarding the brothers, mailed the same day, was sent to the Virginia address he had given the court.) The most that can be said favoring Davis on this point is that the circumstances—including not one but two court orders mailed to him at a misnumbered District address—are clouded as to his knowledge that a conference had been scheduled.

■ Even counting that factor against Davis, however, our decisions reflect the rule that "a single absence from a pretrial conference with no other evidence of dilatoriness on the part of the plaintiff is an insufficient basis for the sanction of dismissal," *Watkins,* 632 A.2d at 110 (quoting *Durham,* 494 A.2d at 1351), at least when the absence has caused no prejudice to the other party not remediable by lesser sanctions, including attorney's fees. *Id.; see also Redman v. Kelty,* 795 A.2d 684, 687 (D.C.2002). Indeed, "the absence of prejudice to the [other] party has 'figured prominently' in our decisions [vacating] a dismissal" with prejudice. *Watkins,* 632 A.2d at 110 (quoting *Hinkle v. Sam Blanken & Co.,* 507 A.2d 1046, 1049 (D.C.1986)). Other than the time and expenses of her attorneys, Davis–Watson has shown no prejudice from Davis's absence at the scheduling conference and her later need

to respond to his motion to reinstate; that cost could have been remedied by an award of attorney's fees, and the trial judge is free to entertain a corresponding motion on remand. The judge was also troubled by Davis's neglect to inquire about his suit during the full ten-month period between the filing of the amended complaint and August 2005 when he saw that the house was on the market. Routinely granting Rule 60(b) motions in such circumstances, the judge believed, would reward sluggishness and impair "the efficient administration of justice." Our cases have validated that concern. *See, e.g.,* *Watkins,* 632 A.2d at 110 (noting that "the finality considerations that underlie Rule 60(b) serve interests beyond the possible prejudice to the party opposing the [motion to reinstate]" (citation omitted)); *Solomon v. Fairfax Village Condo. IV Unit Owner's Ass'n,* 621 A.2d 378, 379–80 (D.C. 1993). Nevertheless, the consistent theme of our decisions has been that a single failure to attend a pretrial conference, not part of a pattern of dereliction by the plaintiff amounting to "willful and deliberate delay," *Durham,* 494 A.2d at 1350, or at least "gross indifference," *Perry v. Sera,* 623 A.2d 1210, 1219 (D.C.1993), or "gross negligence," *Joyce v. Walker,* 593 A.2d 199, 202 (D.C.1991), is insufficient to justify dismissal in the absence of prejudice to the other side commensurate with that sanction. Because the circumstances of this case do not meet that test or support denying Davis consideration of his suit on the merits, the judgment of the trial court is

*Reversed.*